# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

| | | |
|---|---|---|
| BRENDA KOEHLER, | ) | |
| KELLY PARKER, | ) | |
| LAYLA BOLTEN, | ) | |
| & | ) | |
| GREGORY HANDLOSER | ) | |
| | ) | Civil Action No. 2:13-cv-885 |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| INFOSYS TECHNOLOGIES LIMITED | ) | |
| INC., and INFOSYS PUBLIC SERVICES, | ) | |
| INC. | ) | Trial by jury demanded. |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |

## PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

Pursuant to Federal Rule of Civil Procedure 56(a), Plaintiffs Koehler, Parker, and Handloser ("Plaintiffs") hereby move for partial summary judgment against Infosys Technologies Ltd. ("Infosys") on Counts I and II of the Second Amended Complaint (Dkt. #19). Plaintiffs move on the matter of their *prima facie* case – that Infosys operates under a pattern and practice of intentional discrimination against non-Indian and non-South Asian individuals in hiring, promotions, and terminations. Granting summary judgment on Plaintiffs' *prima facie* case would create an inference of discrimination and shift the burden to Infosys at trial to rebut the inference. *See Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 360 (1977); *Shidaker v. Tisch*, 833 F.2d 627, 632 (7th Cir. 1986). This inference would simplify the presentation of evidence presented at trial – *e.g.*, it would minimize the statistical data and expert testimony that would be presented to

the jury.

While substantial direct and anecdotal evidence supports Plaintiffs' claims, for the purposes of this motion, Plaintiffs rely only on statistical evidence, derived from Infosys' own employment records, that cannot reasonably be disputed and that establishes widespread, pervasive discrimination across Infosys' U.S. workforce. "Where gross statistical disparities can be shown, they alone may in a proper case constitute prima facie proof of a pattern or practice of discrimination." *Hazelwood Sch. Dist. v. United States*, 433 U.S. 299, 307-08 (1977) (citing *Teamsters*, 431 U.S. at 337-38 & n.17). This is such a case.

# TABLE OF CONTENTS

PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT ........................................ i

TABLE OF CONTENTS........................................................................................................ iii

TABLE OF AUTHORITIES ............................................................................................... iv

MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR PARTIAL
SUMMARY JUDGMENT ................................................................................................... 1

I.      LEGAL STANDARD................................................................................................ 1

II.     ARGUMENT ............................................................................................................. 2

     A.    Gross Statistical Disparities Alone Can Establish Plaintiffs' *Prima Facie* Case...... 2

     B.    Indisputable Gross Statistical Disparities in Infosys' Hiring, Promotions, and
Terminations Establish Plaintiffs' *Prima Facie* Case......................................................... 5

         *1.    Infosys Engages in a Pattern and Practice of Discrimination in Hiring* .......... 5

         *2.    Infosys Engages in a Pattern and Practice of Discrimination in Promotions* .. 6

         *3.    Infosys Engages in a Pattern and Practice of Discrimination in Terminations* 7

III.    CONCLUSION........................................................................................................... 7

Case 2:13-cv-00885-PP-DEJ   Filed 09/23/16   Page 3 of 13   Document 77-5

# TABLE OF AUTHORITIES

**Cases**

*Adams v. Ameritech Servs., Inc.*, 231 F.3d 414 (7th Cir. 2000)...................................... 4, 5

*Advance Cable Co., LLC v. Cincinnati Ins. Co.*, 788 F.3d 743 (7th Cir. 2015) ............................ 2

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) .................................................. 2

*Benson v. Tocco, Inc.*, 113 F.3d 1203 (11th Cir. 1997). ................................................. 7

*Berger v. Iron Workers Reinforced Rodmen Local 201*, 843 F.2d 1395 (D.C. Cir. 1988) ............. 4

*Brown v. Nucor Corp.*, 785 F.3d 895 (4th Cir. 2015) .................................................... 4

*Casteneda v. Partida*, 430 U.S. 482 (1977) .............................................................. 4

*EEOC v. Dial*, 259 F. Supp. 2d 710 (N.D. Ill. 2003) ..................................................... 2

*EEOC v. O&G Spring & Wire Forms Specialty Co.*, 38 F.3d 872 (7th Cir. 1994) ................... 3, 7

*Ellis v. Costco Wholesale Corp.*, 285 F.R.D. 492 (N.D. Cal. 2012)................................. 3

*Hazelwood Sch. Dist. v. United States*, 433 U.S. 299 (1977) ................................. ii, 3, 4

*Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324 (1977)............................ passim

*Palmer v. Shultz*, 815 F.2d 84 (D.C. Cir. 1987).................................................... 3, 4, 5

*Sagers v. Yellow Freight Sys., Inc.*, 529 F.2d 721 (5th Cir. 1976) ................................. 3

*Segar v. Smith*, 738 F.2d 1249 (D.C. Cir. 1984)....................................................... 3

*Shidaker v. Tisch*, 833 F.2d 627 (7th Cir. 1986)............................................... i, 3, 5, 6

**Statutes**

Civil Rights Act of 1866, 42 U.S.C. § 1981 ("§ 1981")........................................... 1

Civil Rights Act of 1991, 42 U.S.C. 2000e, *et seq.* ............................................... 1

**Rules**

iv

Fed. R. Civ. P. 56(a) ................................................................................................................. i, 2

**Treatises**

C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure (1983) .................................... 2

Case 2:13-cv-00885-PP-DEJ   Filed 09/23/16   Page 5 of 13   Document 77-5

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

Infosys has engaged, and continues to engage, in a systematic pattern and practice of discrimination against non-South Asians and non-Indians in hiring, promotions, and terminations across the United States in violation of Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, 42 U.S.C. 2000e, *et seq.* ("Title VII"), and the Civil Rights Act of 1866, 42 U.S.C. § 1981 ("§ 1981"). As a result of this pattern and practice of discrimination, Infosys has achieved rates of hiring, promotion, and termination disfavoring non-South Asians and non-Indians to such an extreme degree, that the likelihood of these rates occurring by chance is *less than* ███████████ Pls.' Statement of Undisputed Material Facts ¶¶ 5-10, 13-14, 16-17 ("SOF"). Because no genuine dispute exists as to this statistical data, Plaintiffs are entitled to summary judgment on their *prima facie* case of discrimination. Granting summary judgment on Plaintiffs' *prima facie* case would create an inference of discrimination and shift the burden to Infosys at trial to rebut the inference. *See Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 360 (1977); *Shidaker v. Tisch*, 833 F.2d 627, 632 (7th Cir. 1986). This inference would simplify the presentation of evidence presented at trial. Plaintiffs incorporate the accompanying Statement of Undisputed Material Facts ("SOF").[1]

## I. LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 56, summary judgment should be granted where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 permits a party to move for partial summary

---

[1] There are no stipulated facts. *Cf.* Civil L.R. 56(b)(1)(B).

1

judgment. *Id.* ("A party may move for summary judgment, identifying … the part of each claim … on which summary judgment is sought."). "In reviewing []motions for summary judgment, [the court] … construe[s] all facts and draw[s] all reasonable inferences in favor of the non-moving party." *Advance Cable Co., LLC v. Cincinnati Ins. Co.*, 788 F.3d 743, 746 (7th Cir. 2015). "[T]he mere existence of *some* alleged factual dispute between the parties [however] will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact" suitable for a jury determination. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Thus "[o]nly disputes over facts that might affect the outcome of the suit … will properly preclude the entry of summary judgment [and] [f]actual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248 (citing 10A C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 2725, pp. 93–95 (1983)). The moving party is entitled to summary judgment if, "under the governing law, there can be but one reasonable conclusion as to the [issue presented to the Court]." *Id.* at 250.

## II.     ARGUMENT

### A.  Gross Statistical Disparities Alone Can Establish Plaintiffs' *Prima Facie* Case.

As discussed in Plaintiffs' concurrently filed Motion for Class Certification, this case should proceed under the *Teamsters* framework. *See* Pls.' Mem. in Support of Mot. for Class Cert. § I. Under this framework, the case proceeds in phases. During the first phase, Plaintiffs present their *prima facie* case of discrimination.[2] *Teamsters*, 431 U.S. at 336; *EEOC v. Dial*, 259 F. Supp. 2d 710, 712 (N.D. Ill. 2003). An inference of discrimination arises if the Plaintiffs establish a *prima facie* case of discrimination, in which case the burden shifts to Infosys, who then has an opportunity

---

[2] Plaintiffs will also introduce evidence concerning punitive damages.

2

to rebut the plaintiffs' *prima facie* case with its own evidence. *Teamsters*, 431 U.S. at 360; *Ellis v. Costco Wholesale Corp.*, 285 F.R.D. 492, 539 (N.D. Cal. 2012). If Infosys is unable to rebut Plaintiffs' *prima facie* case, liability is established and a remedial phase follows. *Teamsters*, 431 U.S. at 361.

Here, Plaintiffs move for summary judgment on their *prima facie* case only, relying on the statistical disparity reflecting Infosys' discrimination in favor of South Asians applicants and workers. "[S]tatistical evidence can … be sufficient to establish a pattern and practice of discrimination[.]" *EEOC v. O&G Spring & Wire Forms Specialty Co.*, 38 F.3d 872, 876, 878 & n.8 (7th Cir. 1994) (explaining further that "statistical disparities alone may prove intent" as "[s]tatistics showing racial or ethnic imbalance" are "often a telltale sign of purposeful discrimination"). Thus, where sufficiently significant disparities exist, "a court will infer from the numbers alone that, more likely than not, the disparity was a product of unlawful discrimination[.]" *Palmer v. Shultz*, 815 F.2d 84, 91 (D.C. Cir. 1987) (citing *Hazelwood Sch. Dist. v. United States*, 433 U.S. 229, 307-08 (1977) and quoting *Segar v. Smith*, 738 F.2d 1249, 1278 (D.C. Cir. 1984)) ("'[W]hen a plaintiff's methodology focuses on the appropriate labor pool and generates evidence of [a disparity] at a statistically significant level,' this evidence alone will be 'sufficient to support an inference of discrimination.'"); *see Hazelwood*, 433 U.S. at 307-08 ("Where gross statistical disparities can be shown, they alone may in a proper case constitute prima facie proof of a pattern or practice of discrimination."); *Shidaker*, 833 F.2d at 632; *Sagers v. Yellow Freight Sys., Inc.*, 529 F.2d 721, 729 (5th Cir. 1976) (noting "that a prima facie case of racial discrimination may be established by statistical evidence alone, and that a violation of Title VII may be established by statistics as a matter of law").

Courts have consistently found that a disparity of *two standard deviations* is a sufficient

3

disparity to infer the existence of discrimination and to establish a plaintiff's *prima facie* case. *Palmer*, 815 F.2d at 92-93, 96 (noting that a disparity of "1.96 standard deviations" would be sufficient "for a court to establish an inference of disparate treatment on the basis of this evidence alone."); *see Casteneda v. Partida*, 430 U.S. 482, 496 & n.17 (1977) ("proof … enough to establish prima facie case of discrimination" where the demographic difference of "two or three standard deviations" existed); *Hazelwood*, 433 U.S. at 311 n.17 ("fluctuation of more than two or three standard deviations would undercut the hypothesis that decisions were being made randomly with respect to race"); *Brown v. Nucor Corp.*, 785 F.3d 895, 908 (4th Cir. 2015) (finding 2.54 standard deviation statistically significant in racial discrimination case); *Berger v. Iron Workers Reinforced Rodmen Local 201*, 843 F.2d 1395, 1412 (D.C. Cir. 1988) ("in most instances a difference of just under two standard deviations [rather than three] has been deemed sufficient to establish a prima facie case"). In *Adams v. Ameritech Services, Inc.*, the Seventh Circuit explained appropriate methodology and importance of statistical calculations in discrimination cases:

> Studies in employment discrimination cases typically begin by defining the relevant labor market, and then ask what the results would be for the salient variable [*e.g.*, race or national origin,] if there were no discrimination. That is called the "null hypothesis." If the relevant market is 40% African-American, for instance, one would expect 40% of hires to be African-American under the null hypothesis. If the observed percentage of African-American hires is only 20%, then the statistician will compute the "standard deviation" from the expected norm and indicate how likely it is that race played no part in the decisionmaking. *Two standard deviations* is normally enough to show that it is extremely unlikely (that is, there is less than a 5% probability) that the disparity is due to chance, giving rise to a reasonable inference that the hiring was not race-neutral; the more standard deviations away, the less likely the factor in question played no role in the decisionmaking process.

231 F.3d 414, 424 (7th Cir. 2000) (citing *Hazelwood*, 433 U.S. at 308 n.14; *Castaneda,* 430 U.S. at 496 n.17) (emphasis added). Importantly, the defendant's evidence plays no part in determining the plaintiff's *prima facie* case – the defendant's opportunity to rebut plaintiff's case comes after

4

plaintiff has presented her *prima facie* proof. *See Teamsters*, 431 U.S. at 360 (noting that once the plaintiff satisfies her burden of establishing her *prima facie* case, "[t]he burden then shifts to the [defendant] to defeat the prima facie showing of a pattern or practice by demonstrating that the [plaintiff's] proof is either inaccurate or insignificant."); *Shidaker*, 833 F.2d at 632 ("Once a plaintiff makes a *prima facie* showing with statistics of this nature, the burden shifts to the defendant to rebut the inference of discrimination raised by these statistics").

**B. Indisputable Gross Statistical Disparities in Infosys' Hiring, Promotions, and Terminations Establish Plaintiffs'** *Prima Facie* **Case.**

Here, Plaintiffs evidence far exceeds the two standard deviation threshold needed to make their *prima facie* showing of discrimination in hiring, promotions, and terminations, making partial summary judgment appropriate.

*1. Infosys Engages in a Pattern and Practice of Discrimination in Hiring*

A showing of a gross disparity (*i.e.*, two standard deviations) between the demographics of a company's hiring, and those of the relevant labor market, are all that is required to make a *prima facie* showing of discrimination in hiring. *See, e.g.*, *Adams*, 231 F.3d at 424; *Palmer*, 815 F.2d at 92-93, 96. Plaintiffs satisfy this standard.

A gross statistical disparity exists in the number of South Asians versus non-South Asians (and Indians versus non-Indians) hired by Infosys for U.S. positions, compared to the Industry and the occupations that make up ███ of Infosys' U.S. workforce. SOF ¶¶ 2-6. The difference between the number of South Asians employed by Infosys in the United States (███%), and those in the relevant labor markets is, at a minimum, ███ standard deviations. *Id.* ¶¶ 3-4. The difference between the number of South Asians *hired* by Infosys for U.S. positions between 2009 and 2015 (███%), and those in the relevant labor market, is, at a minimum, ███ standard deviations. *Id.*

5

¶¶ 5-6. Similarly, the difference between the number of Indians employed by Infosys in the United States (████%), and those in the relevant labor markets is, at a minimum, ████ standard deviations. *Id.* ¶¶ 7-8. The difference between the number of Indians *hired* by Infosys for U.S. positions between 2009 and 2015 (████%), and those in the relevant labor markets is, at a minimum, ████ standard deviations. *Id.* ¶¶ 9-10. The probability of obtaining any of these results absent discrimination is less than ████████. *Id.* ¶¶ 3-10. Accordingly, summary judgment on Plaintiffs' *prima facie* case of discrimination against non-South Asians and non-Indians in hiring is appropriate. *See O&G Spring*, 38 F.3d at 877-78 (affirming judgment for plaintiff on pattern and practice claim where the "probability using standard deviation analysis of no black hires during the period 1979 through 1985 was infinitesimal.") (citation omitted).

### 2. Infosys Engages in a Pattern and Practice of Discrimination in Promotions

A showing that a company promotes from within, and a demonstration of a gross disparity (*i.e.*, greater than two standard deviations) in promotions at a company is all that is required to make a *prima facie* showing of discrimination in promotions. *Shidaker*, 833 F.2d at 632. Plaintiffs satisfy this standard.

A gross statistical disparity exists in the promotion rate for South Asians compared to that for non-South Asians (and Indians versus non-Indians). Between 2009 and 2015, among Infosys' ████ employees in the United States, the average Infosys employee changed roles ██ times. SOF ¶ 13. ███% of these role changes constituted a promotion. *Id.* When changing roles, Indian employees were promoted ████% of the time. *Id.* ¶ 14. Non-Indians were only promoted ████% of the time – a difference of ████ standard deviations. *Id.* The results when comparing South Asians to non-South Asians is virtually identical. *Id.* The probability of obtaining this result absent discrimination is less than ████████ *Id.* Accordingly, summary judgment on Plaintiffs' *prima*

6

*facie* case of discrimination against non-South Asians and non-Indians in promotions is appropriate. *See O&G Spring*, 38 F.3d at 877-78.

### 3. Infosys Engages in a Pattern and Practice of Discrimination in Terminations

A showing of gross disparity (*i.e.*, two standard deviations) in a company's termination rates by demographic is all that is required to make a *prima facie* showing of discrimination in terminations. *See Benson v. Tocco, Inc.*, 113 F.3d 1203, 1209 (11th Cir. 1997). Plaintiffs satisfy this standard.

A gross statistical disparity exists in the termination rate for South Asians compared to that for non-South Asians (and Indians versus non-Indians). Among those who ended their employment with Infosys in the United States for any reason between 2009 and 2015, ███% of non-Indians were fired (*i.e.*, terminated involuntarily), while only ███% of Indians were fired. SOF ¶ 17. This is a difference of ███ standard deviations. *Id.* The results when comparing South Asians to non-South Asians is virtually identical. *Id.* The probability of obtaining this result absent discrimination is less than ███████ *Id.* Accordingly, summary judgment on Plaintiffs' *prima facie* case of discrimination against non-South Asians and non-Indians in terminations is appropriate. *See O&G Spring*, 38 F.3d at 877-78.

## III. CONCLUSION

For the foregoing reasons, Plaintiffs have satisfied their burden of establishing their *prima facie* case of discrimination in hiring, promotions, and terminations, making judgment as a matter of law appropriate on Plaintiffs' *prima facie* case.

7

Dated September 23, 2016.                    /s/Daniel A. Kotchen

                                             Daniel A. Kotchen
                                             Daniel L. Low
                                             Michael J. von Klemperer
                                             KOTCHEN & LOW LLP
                                             1745 Kalorama Road NW, Suite 101
                                             Washington, DC 20009
                                             (202) 471-1995
                                             (202) 280-1128 (Fax)
                                             dkotchen@kotchen.com
                                             dlow@kotchen.com
                                             mvk@kotchen.com

                                             Michael F. Brown
                                             DVG LAW PARTNER LLC
                                             P.O. Box 645
                                             Neenah, WI 54957
                                             920-238-6781
                                             920-273-6177 (fax)
                                             mbrown@dvglawpartner.com

                                             Vonda K. Vandaveer
                                             V.K. Vandaveer, P.L.L.C.
                                             P.O. Box 27317
                                             Washington, DC 20038-7317
                                             202-340-1215
                                             202-521-0599 (fax)
                                             atty@vkvlaw.com

                                             Attorneys for Plaintiffs