# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

BRENDA KOEHLER,                          )
KELLY PARKER,                            )
LAYLA BOLTEN,                            )
&                                        )
GREGORY HANDLOSER                        )
                                         )    Civil Action No. 2:13-cv-885
Plaintiffs,                              )
                                         )
v.                                       )
                                         )
INFOSYS TECHNOLOGIES LIMITED             )
INC., and INFOSYS PUBLIC SERVICES,       )
INC.                                     )    Trial by jury demanded.
                                         )
Defendants.                              )
                                         )
                                         )

# MEMORANDUM OF LAW IN SUPPORT OF
# PLAINTIFFS' MOTION FOR SANCTIONS AND TO COMPEL

# TABLE OF CONTENTS

**TABLE OF CONTENTS** ................................................................................................. ii

**TABLE OF AUTHORITIES** ........................................................................................ iii

**I.    BACKGROUND** ..................................................................................................... 1

A.    Failure to Preserve and Collect Documents ........................................................... 1

B.    Affirmative Action Materials .................................................................................. 7

C.    Recent Efforts to Resolve Discovery and Sanctions Issues .................................. 12

**II.   LEGAL STANDARDS** ......................................................................................... 12

A.    Sanctions for Failure to Preserve Evidence .......................................................... 13

B.    Sanctions for Failure to Produce Documents ........................................................ 13

C.    Sanctions for Violating Rule 26 Disclosure Obligations ...................................... 14

**III.  ARGUMENT** ...................................................................................................... 15

A.    Infosys Should Be Sanctioned for Failing to Preserve Documents. ...................... 15

1.    *Infosys Had a Duty to Preserve Relevant Custodians' Documents* .................. 15

2.    *Infosys Breached Its Duty to Preserve* .......................................................... 17

3.    *Infosys' Failure to Preserve Has Harmed Plaintiffs* ...................................... 18

4.    *Infosys' Breach of Its Duty to Preserve Was Caused by Willfulness, Bad Faith, or Fault* 20

5.    *Appropriate Sanctions for Infosys' Failure to Preserve* .................................. 21

B.    Infosys Should Be Sanctioned for Failing to Produce the PeopleFluent Documents ............ 23

**IV.   CONCLUSION** ................................................................................................... 25

# TABLE OF AUTHORITIES

**Cases**

*Am. Fam. Mut. Ins. Co. v. Roth*, No. 05 C 3839, 2009 U.S. Dist. LEXIS 32519 (N.D. Ill. Feb. 20, 2009) ..................................................................................................................................... 18

*Cahill v. Dart*, No. 13 C 361, 2016 U.S. Dist. LEXIS 169195 (N.D. Ill. Mar. 4, 2016) ....... passim

*Cahill v. Dart*, No. 13-cv-361, 2016 U.S. Dist. LEXIS 166831 (N.D. Ill. Dec. 2, 2016) ........... 23

*Cannata v. Wyndham Worldwide Corp,* No. 2:10–cv–00068, 2011 U.S. Dist. LEXIS 88977 (D. Nev. Aug. 10, 2011) .................................................................................................................. 22

*Cobell v. Babbit*, 37 F. Supp. 2d 6 (D.D.C.1999) ....................................................................... 15

*Cohn v. Guaranteed Rate, Inc.*, 318 F.R.D. 350 (N.D. Ill. 2016) .......................................... 13, 16

*Danis v. USN Commc'ns, Inc.*, No. 98 C 7482, 2000 U.S. Dist. LEXIS 16900 (N.D. Ill. Oct. 20, 2000) .............................................................................................................................. 15, 17

*David Mizer Enters., Inc. v. Nexstar Broad., Inc.*, No. 14-CV-2192, 2016 U.S. Dist. LEXIS 117076 (C.D. Ill. Aug. 31, 2016) ................................................................................. 14, 23

*Dotson v. Bravo*, 202 F.R.D. 559 (N.D. Ill. 2001) ...................................................................... 25

*FDIC v. Tekfen Const. & Installation Co.*, 847 F.2d 440 (7th Cir. 1988) ................................... 24

*Gray v. City of Columbus*, No. IP98-1395, 2000 U.S. Dist. LEXIS 7207 (S.D. Ind. Jan. 31, 2000) ............................................................................................................................................ 23

*Home Instead, Inc. v. Florance,* No. 8:12CV264, 2013 U.S. Dist. LEXIS 163291 (D. Neb. Nov. 8, 2013) ..................................................................................................................................... 22

*In re Delta/AirTran Baggage Fee Antitrust Litig.*, 846 F. Supp. 2d 1335 (N.D. Ga. 2012)... 23, 24

*Johnson v. Nichols*, No. 12 C 5325, 2013 U.S. Dist. LEXIS 113112 (N.D. Ill. Aug. 12, 2013).. 21

*Jones v. Bremen High Sch.*, No. 08 C 3548, 2010 U.S. Dist. LEXIS 51312 (N.D. Ill May 25, 2010)

iii

.......................................................................................................... passim

*Kirgan v. FCA LLC*, No. No. 10-1392, 2013 U.S. Dist. LEXIS 51747 (C.D. Ill. Apr. 10, 2013) 18

*Lava Trading, Inc. v. Hartford Fire Ins. Co.*, No. 03 Civ 7073, 2005 U.S. Dist. LEXIS 2866 (S.D.N.Y. Feb. 24, 2005) ................................................................................................ 14

*Liberty Mut. Ins. Co. v. Ecowater Sys., Inc.*, No. 02 C 50415, 2004 U.S. Dist. LEXIS 8415 (N.D. Ill. May 11, 2004) ...................................................................................................... 21

*Magnetar Techs. Corp. v. Six Flags Theme Park, Inc.,* 886 F. Supp. 2d 466 (D. Del. 2012) ...... 22

*Metro. Opera Ass'n, Inc. v. Local 100, Hotel Employees & Rest. Employees Int'l Union*, 212 F.R.D. 178 (S.D.N.Y. 2003) ........................................................................................... 15

*Nationwide Agribusiness Ins. Co. v. Meller Poultry Equip., Inc.*, No. 12-C-1227, 2016 U.S. Dist. LEXIS 8289 (E.D. Wisc. Jan. 22, 2016)................................................................ 23

*Newill v. Campbell Transp. Co.*, No. 12-cv-1344, 2013 U.S. Dist. LEXIS 160903 (W.D. Pa. Nov. 12, 2013) ...................................................................................................................... 16

*Northington v. H&M Int'l*, No. 08-CV-6297, 2011 U.S. Dist. LEXIS 14366 (N.D. Ill. Jan. 12, 2011) .............................................................................................................. 20, 21

*Novelty, Inc. v. Mountain View Mktg., Inc.*, 265 F.R.D. 370 (S.D. Ind. 2009)....................... 14, 16

*Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec.*, 685 F. Supp. 2d 456 (S.D.N.Y. 2010) ............................................................................................................. 17

*Plunk v. Vill. of Elwood, Ill.*, No. 07 C 88, 2009 U.S. Dist. LEXIS 42952 (N.D. Ill. May 20, 2009) ....................................................................................................................... 12, 17, 19

*Porche v. Oden*, No. 02 C 7707, 2009 U.S. Dist. LEXIS 15640 (N.D. Ill. Feb. 27, 2009) .......... 20

*Rosenthal Collins Grp. LLC v. Trading Techs. Int'l, Inc.*, No. 05 C 4088, 2011 U.S. Dist. LEXIS 17623 (N.D. Ill. Feb. 23, 2011)........................................................................... 13, 24

iv

*SEC v. First Choice Mgt. Servs., Inc.*, 678 F.3d 538 (7th Cir. 2012) ........................................... 13

*Tate & Lyle Ams., LLC v. Glatt Air Techniques, Inc.,* No. 13–2037, 2014 U.S. Dist. LEXIS 184533

    (C.D. Ill. Aug. 4, 2014) ........................................................................................................ 22

*United Med. Supply Co. v. United States*, 77 Fed. Cl. 257 (Fed. Cl. 2007) ................................... 22

*United States ex rel. Barko v. Halliburton Co.*, 74 F. Supp. 3d 183 (D.D.C. 2014) ................... 22

*Wiginton v. Ellis*, No. 02 C 6832, 2003 U.S. Dist. LEXIS 19128 (N.D. Ill. Oct. 24, 2003) .. 16, 21

*Zubulake v. UBS Warburg LLC*, 229 F.R.D. 422 (S.D.N.Y. 2004) ........................................ 16, 17

### Other Authorities

41 C.F.R. § 60-2.1 ...................................................................................................................... 8

### Rules

Fed. R. Civ. P. 26(g) ............................................................................................................. 14, 23

Fed. R. Civ. P. 37(a) .................................................................................................................. 14

Fed. R. Civ. P. 37(c) .................................................................................................................. 23

Fed. R. Civ. P. 37(d) .................................................................................................................. 13

Fed. R. Civ. P. 37(e) ............................................................................................................. 13, 23

Fed. R. Civ. P. 86 ....................................................................................................................... 13

Infosys has failed to preserve and produce highly relevant materials in this case, including allowing the loss of all files from a key custodian responsible both for instructing Infosys' Talent Acquisition department to favor Indians in recruiting and Plaintiff Handloser's termination. Further, Infosys concealed the existence of, and withheld from discovery, its own affirmative action analyses that demonstrate systematic, company-wide discrimination. Plaintiffs have suffered significant prejudice as a result, and hereby move for sanctions. As discussed below, these sanctions should include: (1) the ability to take additional discovery concerning Infosys' document preservation, collection, and production of documents in this case in order to present to the jury Infosys' failure to preserve evidence, (2) the ability to take additional discovery regarding Infosys' affirmative action efforts and plans in order to mitigate the harm stemming from Infosys' concealment of this evidence in 2015 and 2016 when Plaintiffs and the Court were assessing the appropriate scope of discovery, and (3) an award of attorneys' fees and costs incurred drafting and arguing this motion, and taking and reviewing this additional discovery.

## I.     BACKGROUND

### A.     Failure to Preserve and Collect Documents

Infosys maintains an email server and almost certainly other servers that contain shared documents. Infosys' email server maintains strict size limits on individual email accounts, requiring employees to regularly delete their old emails. Letter from E. Boshkoff to D. Kotchen, *et al*. at 4 (Apr. 25, 2016) (Ex. 1). These emails are only saved if employees manually export them to .pst files on their hard drives. *Id.* Infosys backs up its servers to backup tapes, but these tapes simply mirror what is on the server and are regularly rotated and overwritten. When an employee leaves Infosys, the company automatically deletes all of that employees' files after two weeks. Letter from D. Kotchen to G. Stohner & E. Boshkoff at 1-2 (Apr. 12, 2016) (Ex. 2).

Infosys has failed to preserve and collect documents from key custodians in this case, and

1

important documents have almost certainly been lost as a result. One key custodian whose documents have been lost as a result of Infosys' inadequate preservation and collection efforts is Sanjay Jalona, who worked for Infosys for 15 years and served as an Executive Vice President. Plaintiffs identified to Infosys early in the litigation that Mr. Jalona is a key custodian. In their September 27, 2013 Amended Complaint, Plaintiffs made four references to Mr. Jalona because he was Plaintiff Gregory Handloser's boss and was involved in Mr. Handloser's unjustified termination, and had removed positive feedback about Mr. Handloser from emails. Am. Compl. ¶¶ 98-99 (Dkt. #4).[1] On February 5, 2014, Plaintiffs provided Infosys with the declaration of Samuel Marrero, a former Infosys recruiter who was involved in numerous meetings with Mr. Jalona, in which Mr. Jalona and other management instructed recruiters to focus on recruiting Indian talent. Marrero Decl. at ¶¶ 5, 7-9 (Dkt. #13-1). In the September 9, 2014 Second Amended Complaint, Plaintiffs referenced Mr. Jalona 15 times, including because he instructed recruiters to "stick to" Indian candidates because "[t]hey know our style and culture," and because he dismissed concerns raised by Samuel Marrero that Infosys was rejecting a number of highly qualified non-South Asian candidates. 2d Am. Compl. ¶¶ 29-30 (Dkt. #19). On August 7, 2015, Plaintiffs identified Mr. Jalona on their initial disclosures as an individual likely to have discoverable materials. Pls.' Initial Disclosures at 2 (Ex. 4).

---

[1] Infosys' duty to preserve documents was triggered no later than October 2012, when Plaintiff Brenda Koehler filed her charge of discrimination, putting Infosys on notice of the claims in this case, including that Infosys has a "policy of hiring visa workers of Indian origin rather than American workers." Koehler Equal Rights Division Compl. at 5 (¶ 6) (Ex. 3). Plaintiffs filed this lawsuit on August 1, 2013, providing Infosys additional detail regarding the scope of its duty to preserve potentially relevant documents and emails. Compl. (Dkt. #1).

2

Mr. Jalona almost certainly would have had documents concerning his involvement with (and discriminatory instructions to) the Talent Acquisition department, and documents collected from other custodians reveal that he was intimately involved in both reviewing Mr. Handloser's performance, and the unjustified decision to terminate him.[2] Further, documents produced in March of this year reveal that Mr. Jalona has expressed to other Infosys employees his intentions to discriminate against American workers.[3] Mr. Jalona was also a member of Infosys' affirmative action steering committee and doubtless privy to Infosys' efforts to set and meet placement goals and other affirmative action efforts.

---

[2] Email from B. Murali to S. Jalona, *et al.* (Oct. 30, 2012) (Ex. 5); Email from S. Palepu to V. Lakshmi (Dec. 7, 2012) ("Advice (sic) you discuss this with Sanjay also, since the decision of CRR 4 came from you folks") (Dkt. #95-50); Email from S. Singh to S. Jalona (Oct. 24, 2012) (Dkt. #96-50); Singh (30(b)(6)) Dep. Tr. 156:9-11 (July 22, 2016) (Q: "So you say that the decision [to terminate Handloser] was coming right from the very top?" A: "Right."), 156:12-19 (explaining that Sanjay Jalona made the decision to terminate Handloser's employment) (Ex. 6).

[3] *See* INFOSYS1021877-80 (Ex. 7); Letter from D. Schlesinger to N. Bansal & A. Mishra (Nov. 11, 2015) (Ex. 8). These recently produced documents also included additional evidence of Infosys' fraudulent scheme to create an "inventory" of Indian visa workers through the procurement of invitation letters for positions that do not exist. *See* Letter from D. Schlesinger to N. Bansal & A. Mishra at 2 (Nov. 11, 2015) (Ex. 8); *cf.* Pls.' Mot. for Class Cert. at 5-9 (Dkt. #88).

Employees have filed a number of other complaints for misconduct against Mr. Jalona. *See, e.g.*, INFOSYS1033242-46 at 42-43 (Ex. 9). For example, Mr. Jalona was accused of assigning unjustified and low appraisal scores to disfavored employees. Email from J. Mukherjee to L. Kidd (June 27, 2013) (noting disagreement with CRR score assigned by Mr. Jalona and listing "individuals who have experienced cases of [n]epotism and favoritism while working with Sanjay Jalona and his immediate direct reports that are 'part of his circle.'") (Ex. 10); Email from K. Hoffman to P. Cramer (Sept. 11, 2013) ("Joe said his manager told him that part of the reason he received a CRR 3 was because he did not go to India and he wasn't close to … Siddharth Bohra, Rohit Kedia and Baljeet Chhazal. . . . The above named employees are part of Sanjay Jalona's inner circle and commonly referred to as the CSG Mafia.") (Ex. 11); *cf.* Email from S. Palepu to V. Lakshmi (Dec. 7, 2012) (discussing Jalona's decision to lower Handloser's CRR to 4 prior to terminating him) (Dkt. #95-50).

Infosys' failure to preserve evidence was not limited to Mr. Jalona's files. For example, Infosys also failed to preserve the documents of Rohit Kedia and Chris Weber,[4] despite the fact that Infosys itself identified Mr. Kedia in its initial disclosures, and both Mr. Kedia and Mr. Weber were identified in Plaintiffs' complaints and initial disclosures.[5] Mr. Kedia was another of Mr. Handloser's supervisors, and was part of Sanjay Jalona's inner circle known as the CSG Mafia.[6] Mr. Weber worked closely with Plaintiff Kelly Parker during her tenure as a contractor at Infosys, and was shocked when she was terminated and replaced with a visa worker from India.[7]

Plaintiffs first became concerned that Infosys may not have properly preserved evidence in the spring of 2016 when, during a discovery mediation before Magistrate Judge Joseph, Infosys disclosed that Infosys maintained strict email inbox size limits that required employees to regularly delete emails from Infosys' email server, as well as a policy to delete all employee emails two weeks after they leave the company. Plaintiffs also learned that, at the start of the case, Infosys did not stop the automatic deletion of emails, did not pull backup tapes from its email and file servers

---

[4] Email from E. Boshkoff to M. von Klemperer, *et al.* (July 27, 2017) (Ex. 13).

[5] Defs.' Initial Disclosures at 3 (Ex. 14); 2d Am. Compl. ¶¶ 72, 106 (Dkt. #19); Pls.' Initial Disclosures at 3-4 (Ex. 4).

[6] 2d Am. Compl. ¶¶ 72, 106 (Dkt. #19); Defs.' Initial Disclosures at 3 (Ex. 14); Email from K. Hoffman to P. Cramer (Sept. 11, 2013) ("Joe said his manager told him that part of the reason he received a CRR 3 was because … he wasn't close to … Siddharth Bohra, Rohit Kedia and Baljeet Chhazal. . . .The above named employees are part of Sanjay Jalona's inner circle and commonly referred to as the CSG Mafia.") (Ex. 11).

[7] Emails from C. Weber to K. Parker (Sept. 10, 2013) (praising Kelly Parker for her work and stating "You're kidding me!" when Ms. Parker told Chris Weber she had been fired) (Ex. 16); Email from C. Weber to K. Parker, *et al.* (Sept. 3, 2013) (thanking Kelly Parker and "for doing a fantastic job" on desktop support at the Harley-Davidson 110th event) (Ex. 19); 2d Am. Compl. ¶ 72 (Dkt. #19).

4

(resulting in the tapes being overwritten), and did not otherwise collect a corpus of documents from relevant custodians.[8] Letter from D. Kotchen to G. Stohner & E. Boshkoff at 1-3 (Apr. 12, 2016) (Ex. 2); Email from E. Boshkoff to M. von Klemperer, *et al.* (July 25, 2016) (Ex. 17).

Plaintiffs promptly contacted Infosys to determine whose documents had been retained (in order to, among other things, determine whose documents should be searched for ESI), and learn additional information regarding Infosys' email retention policies.[9] Infosys refused to provide detailed information regarding its preservation efforts, so Plaintiffs noticed a Rule 30(b)(6) deposition to address these issues. Notice of Rule 30(b)(6) Dep. at Topics 1-4 (Ex. 21). Infosys objected to providing a witness on these topics, and the parties discussed the matter with Magistrate Judge Jones. The Court stated that it "will not entertain document preservation" discovery without additional information. Minute Sheet at 2 (Dkt. #58). He instructed Plaintiffs "to trust at this point the professionalism of defendants' counsel[,]" but that "[i]f additional evidence comes to light at a later date, this matter can be re-addressed." *Id.*

Plaintiffs have since learned that Infosys failed to retain the files of Mr. Jalona, Mr. Kedia, and Mr. Weber. Email from E. Boshkoff to M. von Klemperer, *et al.* (July 27, 2016) (Ex. 13). For example, Mr. Jalona left Infosys in July or August 2015 – almost two years after the Amended

---

[8] Rather, the only step apparently taken by Infosys in 2013, 2014, or 2015 was to send a notice of the litigation to an undisclosed list of potentially relevant custodians in 2013 (and in later years to some additional custodians), and may have given undisclosed directions about preservation. Infosys apparently failed to issue follow-up notices or reminders to custodians about the litigation or the ongoing need to preserve documents for the litigation.

[9] Emails from D. Kotchen to E. Boshkoff, *et al*. (Apr. 7 & 8, 2016) (Ex. 18); Email from D. Kotchen to Hon. N. Joseph (Apr. 12, 2016) (Ex. 20); Letter from D. Kotchen to G. Stohner & E. Boshkoff (Apr. 12, 2016) (Ex. 2).

Complaint specifically identified him as a relevant custodian, and the same month Infosys received Plaintiffs' initial disclosures identifying him (again) as a custodian of discoverable information – to become the CEO of L&T Infotech, a publicly traded company that provides IT services and IT consulting and generates $1 billion in annual revenues. Mr. Jalona initially worked out of its offices in Edison, New Jersey,[10] and later moved to L&T Infotech's offices in Bangalore, India. Infosys never copied the files on Mr. Jalona's laptop or smartphone[11] at any time before his departure from Infosys, and never collected a copy of Mr. Jalona's files from its servers or backup tapes before they were overwritten or otherwise destroyed, and elected not to inform Plaintiffs of Mr. Jalona's departure from Infosys until after Mr. Jalona returned to India. Upon his departure, Infosys claims that it allowed Mr. Jalona to take his Infosys laptop and files with him when he left to become the CEO of a competitor – even though they presumably contained confidential and proprietary Infosys information. Email from E. Boshkoff to M. von Klemperer, *et al.* (July 19, 2016) (Ex. 23).

Infosys apparently has not made any effort to require Mr. Jalona to return his Infosys laptop.[12] In 2016, Infosys informed Plaintiffs that Mr. Jalona "did not return his laptop upon departing,"[13] and that Infosys had "not been able to locate usable ESI for . . . Sanjay Jalona[,] Rohit Kedia[, and] Chris Weber[.]"[14] In other words, Infosys allowed relevant documents from Mr.

---

[10] *See* http://www.larsentoubro.com/media/32002/2015-08-11-lt-infotech-appoints-mr-sanjay-jalona-as-ceo-managing-director.pdf ("Mr. Jalona will operate out of L&T Infotech's office in Edison, New Jersey, USA.") (Ex. 22).

[11] *See* Email from S. Jalona to S. Singh (Oct. 24, 2012) ("Sent From BlackBerry") (Dkt. #96-50).

[12] In contrast, on July 29, 2016, Infosys threatened to sue Mr. Handloser for retaining work files relevant to this case, and demanded that he immediately return them, presumably because they were harmful to Infosys' defense. Letter from G. Stohner to D. Kotchen, *et al.* (July 29, 2016) (Ex. 24); Letter from D. Kotchen to G. Stohner (Aug. 14, 2016) (Ex. 25).

[13] Email from E. Boshkoff to M. von Klemperer (July 19, 2016) (Ex. 23).

[14] Email from E. Boshkoff to M. von Klemperer (July 27, 2016) (Ex. 13).

Jalona and others on its servers and backup tapes to be destroyed after it had a duty to preserve them, and permitted Mr. Jalona to take the last remaining copy of his documents with him and has not attempted to recover them.

When Plaintiffs learned that Infosys allowed a substantial amount of highly relevant ESI to be destroyed, they promptly issued discovery requests for documents concerning Infosys' servers, backups, preservation efforts, and efforts to obtain documents from Mr. Jalona and Mr. Kedia. Pls.' 3d Set of RFPs at Reqs. 1-3 (Ex. 26). Infosys has objected to producing any documents in response to these document requests. Infosys' Resps. to Pls.' 3d Set of RFPs at Resps. 1-3 (Ex. 27). The parties met and conferred on October 3, 2016, but Infosys maintained its position that it would not produce responsive documents.[15]

## B.    Affirmative Action Materials

On July 24, 2015, Plaintiffs issued discovery to Infosys, requesting, among other things, documents related to "the demographics or statistics of Infosys' United States work force[.]" *See* Pls.' 1st Set of RFPs at Request No. 5 (Ex. 28). Infosys objected to Plaintiffs' discovery on the basis of burden. A discovery dispute ensued, and, pursuant to court order, Infosys eventually produced dozens of spreadsheets containing raw data on its workforce to Plaintiffs on November 24, 2015. Hr'g Tr. 33:12-34:15, 36:11-19 (Nov. 9, 2015) (Ex. 29). The data encompassed hundreds of fields, containing thousands of codes, for tens of thousands of employees, spread over the several dozen spreadsheets. Given the vast quantity of data, its organization, and the many proprietary codes it contained, it was difficult for anyone new to the data to analyze – *e.g.*, promotions were difficult to define, map and examine; promotions made in the U.S. versus India

---

[15] Email from E. Boshkoff to M. von Klemperer, *et al.* (Sept. 30, 2016) (Ex. 39).

were difficult to track; discerning visa holders from non-visa holders was difficult; understanding the coding and location of terminations was difficult; *etc.*

The parties then engaged in a series of meet and confers to discuss additional information relevant to the lawsuit that Infosys would produce in discovery. During this process, Infosys represented to Plaintiffs that it had no additional documents or data concerning the demographics or statistics of Infosys' United States work force, other than the data Infosys already produced to Plaintiffs and EEO-1 reports.[16]

This representation was not accurate. Infosys is a contractor for the federal government and is required to conduct affirmative action analyses. 41 C.F.R. § 60-2.1. As part of this requirement, Infosys supplies data to PeopleFluent. PeopleFluent in turn analyzes the data and, each year, provides Infosys with statistical reports concerning Infosys' United States workforce and its hiring, promotion, and termination practices – the very issues that are the subject of Dr. Neumark's analyses. *See* Grunert Decl. ¶ 2, Tables 1-17 (Feb. 6, 2017) (Dkt. #116-28).

The PeopleFluent analyses help demonstrate that Infosys discriminated in favor of Indians and South Asians, that Infosys knew its workforce was highly disproportionate, and that it consistently failed to meet placement goals. The analyses reflect a stark statistical disparity in hiring favoring "Asians," the EEO racial category that encompasses South Asians.[17] *Id.*

---

[16] Letter from D. Kotchen to G. Stohner (Feb. 24, 2016) ("Please let me know by the close of business Friday if Plaintiffs are mistaken concerning any information in the chart.") (Ex. 30); Discovery Chart at Request No. 5 (Ex. 30); Email from E. Boshkoff to D. Kotchen, *et al.* (Apr. 4, 2016) (noting "[h]ere is an updated discovery chart" and making no changes to Request No. 5) (Ex. 31); Updated Discovery Chart at Request No. 5 (Ex. 31).

[17] The overwhelming majority of Infosys' "Asian" employees are South Asian. Expert Report of

PeopleFluent analyzes relevant labor markets of the United States and individual states,[18] and the disparity exists at the corporate level, across business units, across job categories, and across geographies.[19] Year over year, location by location, and position by position, the disparity far exceeds placement goals set to try to curb preference for a single race.[20] Grunert Decl. Table 1 (Dkt. #116-28); Dkt. #116-25. The PeopleFluent analyses of promotions and terminations similarly reflect stark disparities in favor of Asians at the corporate level, across business units, across job categories, and across geographies.[21] Moreover, the PeopleFluent analyses incorporate visa holders from India (*i.e.*, "deputees"), contrary to Infosys' current argument that deputees should be excluded from any discrimination analysis.[22]

But Infosys never disclosed the existence of PeopleFluent analyses to Plaintiffs. In one

---

David Neumark ("Neumark Report") ¶¶ 15-16 (Ex. Dkt. #116-1); INFOSYS0107269-7284 (Dkt. #116-2).

[18] *See, e.g.*, Infosys Reasonable Recruitment Labor Area Distributions (Dkt. #116-3); PeopleFluent Affirmative Action Plan Statistical Reports Review at 27-28 (Dkt. #116-4).

[19] Grunert Decl. ¶ 2 & Tables 1-7 (Dkt. #116-28); Dkt. #116-6; Dkt. #116-7; Dkt. #116-8; Dkt. #116-25; Dkt. #116-26; Dkt. #116-27; Dkt. #116-40.

[20] Infosys' consistent and widespread failure to meet placement goals is highly probative of discrimination. *See Mozee v. Am. Comm. Marine Serv. Co.*, 940 F.2d 1036, 1051 (7th Cir. 1991) (defendant's "noncompliance with its various affirmative-action plans [is] probative of discriminatory intent"); *Holley v. Pansophic Sys., Inc.*, No. 90 C 7505, 1993 U.S. Dist. LEXIS 13910, at *18 (N.D. Ill. Oct. 1, 1993) ("dismal performance on an affirmative action plan is probative of discriminatory intent").

[21] Grunert Decl. ¶ 2 & Tables 8-17 (Dkt. #116-28); Dkt. #116-6; Dkt. #116-27; Dkt. #116-32; Dkt. #116-33; Dkt. #116-34; Dkt. #116-37; Dkt. #116-38; Dkt. #116-39.

[22] *Compare, e.g.*, Dkt. #116-25 at 7 (PeopleFluent document noting that as of 3/31/16, Infosys had 20,292 U.S. employees) *with* Am. Answer ¶ 12 (noting that in 2015, Infosys had approximately 19,500 employees in the United States) (Dkt. #33) *and* Dkt. #116-22 at 7 (indicating 13,592 visa workers "At Onsite USA").

meet and confer call, Infosys' counsel represented to Plaintiffs' counsel that she had been aware of the PeopleFluent documents early on, but had decided not to produce them without informing Plaintiffs of their existence, and instead produced the underlying raw data (though Infosys refused to produce even this data until being ordered to do so). Von Klemperer Decl. ¶¶ 2-3 (Ex. 12); *see also* Minute Sheet at 2 (Dkt. #120) (admitting that "Documents were available"). But, as noted above, this raw data was incredibly voluminous, disaggregated, and difficult to understand, and the data did not reflect the thousands of analyses Infosys was performing on its workforce each year, including Infosys' setting of placement goals and its consistent, widespread, failure to meet those goals.[23]

Plaintiffs only learned about the PeopleFluent data from third party witness on June 14, 2016. Plaintiffs provided Infosys notice of their intent to subpoena PeopleFluent records directly from PeopleFluent on June 15, 2016, but Infosys still did not reveal the existence of the PeopleFluent analyses.[24] Email from M. von Klemperer to E. Boshkoff, *et al.* (June 15, 2016) (Ex. 33). After subpoenaing PeopleFluent, Plaintiffs were forced to engage in months of negotiations with PeopleFluent's counsel, and finally obtained responsive documents in December 2016 and January 2017 – months after Plaintiffs filed their opening class certification brief. Pls.' Class Cert.

---

[23] *See* Pls.' Class Cert. Sur-reply at 1 (discussing "barn yard" of data, to use Infosys' term, Infosys produced in lieu of the detailed, easily understandable PeopleFluent analyses) (Dkt. #132).

[24] When Plaintiffs directly asked Infosys to produce the PeopleFluent analyses in November 2016, Infosys stated that it had already produced all affirmative action documents. Email from E. Boshkoff to M. von Klemperer, *et al.* (Nov. 17, 2016) (Plaintiffs: "Plaintiffs have learned that individuals such as Sandra Jackson and Davina Linguist are in possession of a variety of demographic data … provided by PeopleFluent. Please produced all demographic data in full." Infosys: "We produced all of Infosys's Affirmative Action plans months ago.") (Ex. 32).

Sur-reply at 7-8 (Dkt. #132).[25] PeopleFluent ultimately produced about 40,000 analyses and spreadsheets. *Id.*

After Plaintiffs informed the Court that Infosys had withheld its copy of the PeopleFluent documents, the Court ordered that Infosys "produce all documents plaintiff requests." Minute Sheet at 2 (Dkt. #120). Infosys admitted that the PeopleFluent "[d]ocuments were available" to Infosys all along, as they were "[s]tored in an electronic depository" to which Infosys had electronic access at any time, *id.*, and Infosys produced its own copies of the PeopleFluent analyses on February 10 and 16, 2017.[26] Infosys subsequently provided additional information regarding its affirmative action program, including the identities of its "affirmative action anchors," its principle points of contact at PeopleFluent, and the name of the software it uses to calculate its placement goals.[27]

Had Plaintiffs known of the PeopleFluent analyses early in the case, it would have substantially impacted the course of discovery and possibly shortened the case. Knowledge of the PeopleFluent analyses would have shaped Plaintiffs' selection of document custodians, deponents, and ESI search terms, and would have affected the timing and content of Plaintiffs' motions for

---

[25] Despite repeated requests, PeopleFluent failed to produce any documents or data until December 13, 2016, and only provided a more robust (but still incomplete) set of data on January 17, 2017, just three weeks prior to Plaintiffs' deadline to file their class certification reply. *See* Pls.' Class Cert. Sur-reply at 7-8 (Dkt. #132); Dkt. #116-8.

[26] *See* Email from K. Atteberry to D. Kotchen, *et al.* (Feb. 10, 2017) (Ex. 34); Email from E. Boshkoff to D. Kotchen, *et al.* (Feb. 13, 2017) (Ex. 35).

[27] Email from R. Fulgoni-Britton to D. Kotchen, *et al.* (Apr. 4, 2017) (Ex. 36); Email from R. Fulgoni-Britton to D. Kotchen, *et al.* (Apr. 17, 2017) (Ex. 36); Email from E. Boshkoff to M. von Klemperer, *et al.* (Mar. 30, 2017) (Ex. 40).

11

summary judgment and class certification. Moreover, the PeopleFluent analyses, which contain many of the same analyses Dr. Neumark performed using Infosys' raw data, would have substantially assisted his efforts. For example, Plaintiffs would have taken discovery regarding the sources of data and methods used by Infosys and PeopleFluent in calculating hiring, promotion, and termination rates, employee and applicant races, company structure, hierarchy, and job categories, and a slew of other highly relevant and probative information.[28]

## C.      Recent Efforts to Resolve Discovery and Sanctions Issues

On April 18, 2017, the parties met and conferred further regarding the matters discussed above in an effort to resolve outstanding disputes. Following this call, Plaintiffs provided Infosys with its proposal to resolve outstanding discovery issues. Email from M. von Klemperer to E. Boshkoff, *et al.* (Apr. 20, 2017) (Ex. 37); Pls.' Discovery Proposal (Ex. 38). Infosys stated that it would respond to Plaintiffs proposal the following week. Email from E. Boshkoff to M. von Klemperer, *et al.* (Apr. 20, 2017) (Ex. 37). Despite follow-up from Plaintiffs, Infosys has not responded to Plaintiffs' proposal.

## II.      LEGAL STANDARDS

The purpose of imposing sanctions is to prevent abuses of the judicial process and to promote the efficient administration of justice. *Plunk v. Vill. of Elwood, Ill.*, No. 07 C 88, 2009 U.S. Dist. LEXIS 42952, at *27 (N.D. Ill. May 20, 2009). Discovery sanctions may be imposed for, *inter alia*, a party's: (a) party's failure to preserve evidence that it had a duty to preserve; (b) failure to diligently search for and produce responsive documents; or (c) a party's false

---

[28] Infosys, has, for example, attacked Dr. Neumark's analysis for the way he determined applicant and employee race and visa status. But Infosys and PeopleFluent had already made these same types of determinations in conducting their detailed analyses on Infosys' workforce, yet Plaintiffs and Dr. Neumark were denied an opportunity to learn how those determinations were made.

representations about discovery. Courts have "broad, inherent power to impose sanctions for failure to produce discovery and for destruction of evidence, over and above the provisions of the Federal Rules." *Cohn v. Guaranteed Rate, Inc.*, 318 F.R.D. 350, 354 (N.D. Ill. 2016) (citing *SEC v. First Choice Mgt. Servs., Inc.*, 678 F.3d 538, 543 (7th Cir. 2012)).

### A. Sanctions for Failure to Preserve Evidence

Discovery sanctions may be imposed when a party "fails to preserve evidence which it controls and which it could reasonably foresee to be material to a potential lawsuit." *Cahill v. Dart*, No. 13 C 361, 2016 U.S. Dist. LEXIS 169195, at *11 (N.D. Ill. Mar. 4, 2016). Sanctions for failure to preserve evidence may be appropriate under Fed. R. Civ. P. 37(e), which provides that:

> If electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court: (1) upon finding prejudice … may order measures no greater than necessary to cure the prejudice[.][29]

Sanctions may also be imposed under the court's inherent powers "for failing to preserve properly discoverable potential evidence." *Rosenthal Collins Grp. LLC v. Trading Techs. Int'l, Inc.*, No. 05 C 4088, 2011 U.S. Dist. LEXIS 17623, at *44 (N.D. Ill. Feb. 23, 2011).

### B. Sanctions for Failure to Produce Documents

A failure to produce documents may be sanctioned under Rule 37(d):

> [A] culpable failure to produce documents in response to a request to produce can be the basis for sanctions under Fed. R. Civ. P. 37(d). Parties are required to respond to requests to produce in a complete and accurate fashion. This in turn requires that parties take reasonable steps to ensure that their responses to requests to produce are complete and accurate. Ultimate production of the material in question does not absolve a party where it has failed to produce the material in a timely fashion. Once a failure to comply with the discovery rules is established, sanctions are appropriate; the degree of culpability is only a

---

[29] This version of Rule 37(e) took effect on December 1, 2015, and governs "an action then pending unless: . . . the court determines that applying them in a particular action would be infeasible or work an injustice." Fed. R. Civ. P. 86(a)(2).

13

factor in determining the severity of the sanctions to be applied. Thus, a failure to make discovery, even if occasioned by simple negligence, may justify the imposition of sanctions.

*David Mizer Enters., Inc. v. Nexstar Broad., Inc.*, No. 14-CV-2192, 2016 U.S. Dist. LEXIS 117076, at *8-9 (C.D. Ill. Aug. 31, 2016) (citations omitted).

An "incomplete disclosure . . . must be treated as a failure to disclose." Fed. R. Civ. P. 37(a)(4). A party responding to a document request is required to "conduct a 'careful and thorough' search for all responsive documents within the thirty-day period," or to "'seek appropriate extensions.'" *Novelty, Inc. v. Mountain View Mktg., Inc.*, 265 F.R.D. 370, 376 (S.D. Ind. 2009) (quoting *Lava Trading, Inc. v. Hartford Fire Ins. Co.*, No. 03 Civ. 7073, 2005 U.S. Dist. LEXIS 2866, at *28 (S.D.N.Y. Feb. 24, 2005)).[30]

### C. Sanctions for Violating Rule 26 Disclosure Obligations

"Under Rule 26(g), a court must impose sanctions . . . when the party fails to meet its disclosure obligations under Rule 26." *Rosenthal Collins Grp. LLC*, 2011 U.S. Dist. LEXIS 17623, at *44. Rule 26(g) provides that every signature on a discovery response "certifies that to the best of the person's knowledge, information, and belief formed after a reasonable inquiry" that the response is complete and correct. Fed. R. Civ. P. 26(g). The signature certifies that the responding attorney has made a "reasonable effort to assure that the client has provided all the information and documents available to him that are responsive to the discovery demand." Fed. R. Civ. P. 26(g) Advisory Comm. Note.[31] Rule 26(g) sanctions are mandatory. Fed. R. Civ. P. 26(g)(3). Rule

---

[30] Rule 37(a)(5) provides that a court "must" award "reasonable expenses incurred in making [a] motion [to compel], including attorney's fees," unless the opposing party's response was "substantially justified" or such an award would be "unjust." Fed. R. Civ. P. 37(a)(5).

[31] Rule 26(g) requires that both "the investigation undertaken by the attorney and the conclusions drawn therefrom are reasonable under the circumstances." Fed. R. Civ. P. 26(g) Comm. Note.

26(g) sanctions are appropriate where, as here, counsel makes false representations about discovery in "formal responses, in letters[,] and to the Court – particularly counsel's repeated representations that all responsive documents had been produced[.]" *Metro. Opera Ass'n, Inc. v. Local 100, Hotel Employees & Rest. Employees Int'l Union*, 212 F.R.D. 178, 221 (S.D.N.Y. 2003).

## III.    ARGUMENT

Discovery sanctions are appropriate for Infosys': (a) failure to preserve and collect documents; and (b) concealment of and failure to produce PeopleFluent documents in its control.

### A. Infosys Should Be Sanctioned for Failing to Preserve Documents.

Spoliation sanctions under the Federal Rules or the Court's inherent power are appropriate when a party fails to preserve evidence if the court finds: "1) that there was a duty to preserve the specific documents and/or evidence, 2) that the duty was breached, 3) that the other party was harmed by the breach, and 4) that the breach was caused by the breaching party's willfulness, bad faith, or fault." *Jones v. Bremen High Sch.*, No. 08 C 3548, 2010 U.S. Dist. LEXIS 51312, at *15 (N.D. Ill May 25, 2010).[32]

#### 1.  Infosys Had a Duty to Preserve Relevant Custodians' Documents

"The scope of the duty to preserve is a broad one, commensurate with the breadth of discovery permissible under Fed. R. Civ. P. 26." *Danis*, 2000 U.S. Dist. LEXIS 16900, at *98. A party has a duty to preserve evidence over which it has control "if there is a possibility that the information therein is relevant to any of the claims." *Jones*, 2010 U.S. Dist. LEXIS 51312, at *16. "The obligation to produce responsive documents extends to all documents over which the party

---

[32] "Whether proceeding under Rule 37 of the Federal Rules of Civil Procedure or under a court's inherent powers, the 'analysis is essentially the same.'" *Danis v. USN Commc'ns, Inc.*, No. 98 C 7482, 2000 U.S. Dist. LEXIS 16900, at *92 (N.D. Ill. Oct. 20, 2000) (quoting *Cobell v. Babbit*, 37 F. Supp. 2d 6, 18 (D.D.C.1999)).

has control, not merely possession." *Novelty*, 265 F.R.D. at 375-76. At the latest, the duty to preserve attaches when the defendant learns of the plaintiff's claim. *Cohn*, 318 F.R.D. at 354. The complaint helps inform parties of the likely scope of information that is likely to be sought in discovery. *Danis*, 2000 U.S. Dist. LEXIS 16900, at *99. A defendant has "a duty to preserve the computer hard drives, e-mail accounts, and internet records of anyone who left the company who had been accused . . . of … misconduct." *Wiginton v. Ellis*, No. 02 C 6832, 2003 U.S. Dist. LEXIS 19128, at *17 (N.D. Ill. Oct. 24, 2003).

Here, Plaintiff Koehler filed her EEOC complaint on October 18, 2012, (Ex. 3), triggering a duty to preserve. *See Jones*, 2010 U.S. Dist. LEXIS 51312, at *19, 23 ("Defendant clearly had a duty to preserve documents relevant to plaintiff's claims when it received notice of plaintiff's EEOC charges"). Plaintiffs' Complaint and Amended Complaint provided Infosys with additional details that clarified and potentially broadened the scope of its duty to preserve. For example, the EEOC complaint and Plaintiffs' Complaint put Infosys on notice of their duty to preserve documents from the files of top executives, especially those involved in decision-making about hiring policies and the use of visa holders, which included Sanjay Jalona.[33] At the latest, Infosys was on notice of the relevance of Mr. Jalona's files on September 27, 2013, when Plaintiffs filed their Amended Complaint (Dkt. #4), which made repeated references to Mr. Jalona, Rohit Kedia, and Chris Weber. Am. Compl. ¶¶ 67, 101 (Dkt. #4); *see also* 2d Am. Compl. ¶¶ 72, 106 (Dkt. #19); Defs.' Initial Disclosures at 2 (identifying Mr. Kedia) (Ex. 14).

---

[33] "[A] party must identify potentially 'key players' in the litigation 'who [are] likely to have relevant information' and then ensure that these key players turn over all of the relevant material in their possession." *Newill v. Campbell Transp. Co.*, No. 12-cv-1344, 2013 U.S. Dist. LEXIS 160903, at *5 (W.D. Pa. Nov. 12, 2013) (quoting *Zubulake v. UBS Warburg LLC*, 229 F.R.D. 422, 432 (S.D.N.Y. 2004)).

### 2. *Infosys Breached Its Duty to Preserve*

To fulfill a duty to preserve, a party must actively take "concrete actions reasonably calculated to ensure that relevant materials would be preserved[,]" which includes "follow-up" to ensure that preservation directives are followed. *Danis*, 2000 U.S. Dist. LEXIS 16900, at *115. Custodians "should be periodically reminded that the preservation duty is still in place." *Zubulake*, 228 F.R.D. at 434. Parties must "act[] reasonably" in carrying out its preservation obligation, and "[i]t is unreasonable to allow a party's interested employees to make the decision about the relevance of . . . documents, especially when those same employees have the ability to permanently delete unfavorable email from a party's system." *Jones*, 2010 U.S. Dist. LEXIS 51312, at *21-22. A party acts unreasonably when it fails "to cease the deletion of email or to preserve the records of former employees that are in a party's possession, custody, or control[.]" *Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec.*, 685 F. Supp. 2d 456, 471 (S.D.N.Y. 2010); *accord Jones*, 2010 U.S. Dist. LEXIS 51312, at *23. The duty to preserve is breached when evidence in a party's control is lost or destroyed, even when it is through a failure to suspend an automatic deletion policy. *Cahill*, 2016 U.S. Dist. LEXIS 169195, at *14-15; *Jones*, 2010 U.S. Dist. LEXIS 51312, at *23; *Plunk*, 2009 U.S. Dist. LEXIS 42952, at *38-41.

Here, Infosys acted unreasonably by failing to cease the deletion of email and the recycling of backup tapes, and by failing to make a copy of relevant custodians' files after its duty to preserve was triggered in 2012, or after Plaintiffs filed their Complaint and amendments in 2013 and 2014. *Jones*, 2010 U.S. Dist. LEXIS 51312, at *19, 23 ("[Defendant] certainly had a duty to preserve extant email folders when it was first notified of the EEOC filing"); *Cahill*, 2016 U.S. Dist. LEXIS 169195, at *14-15; *Plunk*, 2009 U.S. Dist. LEXIS 42952, at *38-41. While Infosys notified an undisclosed list of custodians, on undisclosed dates, about the litigation, it inappropriately relied on self-interested custodians to ensure compliance, and made no apparent efforts to follow up with

17

custodians to ensure documents were being adequately preserved, and apparently failed to send periodic reminders. Such an approach is unreasonable, especially because self-interested custodians were able to "permanently delete … email[s,]" and there is "no evidence" that more extensive preservation "would have placed any burden on defendant." *Jones*, 2010 U.S. Dist. LEXIS 51312, at *23. Instead, Infosys waited to collect documents until years later – in 2016 – after numerous relevant documents were undoubtedly lost or destroyed. *Id.* at *31 (imposing spoliation sanction where party did not suspend auto-deletion or collect relevant documents until 11 months after duty to preserve arose). Infosys also failed to preserve the files of Sanjay Jalona, Rohit Kedia, and Chris Weber, and failed to ensure the return of Mr. Jalona's files when he left Infosys, breaching its duty to preserve. *Id.* at *23, 31.

### 3. Infosys' Failure to Preserve Has Harmed Plaintiffs

"Although 'prejudice is not an essential precondition to an award of sanctions, the choice of sanctions is a function of the prejudice suffered.'" *Cahill*, 2016 U.S. Dist. LEXIS 169195, at *19 (quoting *Am. Fam. Mut. Ins. Co. v. Roth*, No. 05 C 3839, 2009 U.S. Dist. LEXIS 32519, at *14 (N.D. Ill. Feb. 20, 2009)). Prejudice can be found when, through a failure to suspend routine deletion of documents, a plaintiff is "deprived of a valuable source of potentially-impeaching information," including where documents are destroyed from one of the "key decision makers with respect to Plaintiff's employment[,]" meaning that "Plaintiff is now stuck with [the witness's] testimony about meetings and events, with no documentary means of challenging or verifying it." *Kirgan v. FCA LLC*, No. No. 10-1392, 2013 U.S. Dist. LEXIS 51747, at *5 (C.D. Ill. Apr. 10, 2013); *see also Jones*, 2010 U.S. Dist. LEXIS 51312, at *25 (finding that harm sufficient to support spoliation sanctions existed when there was a "distinct possibility that emails relevant to plaintiff's case were destroyed"); *Cahill*, 2016 U.S. Dist. LEXIS 169195, at *19 (finding prejudice from failure to prevent overwriting of evidence where "[e]vidence of this nature would be crucial to

18

proving his claims").

Courts recognize that "it is impossible for plaintiffs to know what evidence was destroyed unless they are clairvoyant," and that it is sufficient to establish prejudice if there is evidence that some potentially relevant emails are missing. *Plunk*, 2009 U.S. Dist. LEXIS 42952, at *40.

Here, Infosys' breach of its duty to preserve undoubtedly caused prejudice to Plaintiffs, as emails and other files of relevant custodians have been lost or destroyed, including files from hard drives, servers, and backup tapes that were not preserved, including those of Sanjay Jalona, a top executive involved in implementing Infosys' policy of favoring Indian visa workers over Americans, and involved in the termination of named Plaintiff Greg Handloser.[34] While a handful of emails related to Mr. Jalona have been produced (from other custodians), they are incomplete, and help confirm Mr. Jalona's role in terminating Mr. Handloser.[35] Likewise, Plaintiffs have obtained no documents from Rohit Kedia, whom Infosys described as "likely having information regarding Plaintiff Handloser's job duties, responsibilities, and experiences, and the Toyota account referenced in Plaintiffs' Second Amended Complaint." Defs.' Initial Disclosures at 2 (Ex. 14).[36] Plaintiffs have also obtained no documents from Chris Weber, who worked closely with

---

[34] 2d Am. Compl. ¶¶ 28-30, 103-04 (Dkt. #19); Marrero Decl. at ¶¶ 5, 7-9 (Dkt. #13-1).

[35] Email from S. Palepu to S. Singh (Dec. 7, 2012) ("Are you saying that despite his good performance, you still rated him a CRR 4? . . . Advice (sic) you discuss this with Sanjay [Jalona] also, since the decision of CRR 4 came from you folks.") (Dkt. #95-50); Email from S. Singh to S. Jalona (Oct. 24, 2012) (giving Mr. Handloser a CRR score of 3) (Ex. 15); Email from S. Singh to S. Jalona (Nov. 12, 2012) (confirming Mr. Handloser's CRR score of 3) (Ex. 15); Email from B. Murali to S. Jalona, *et al.* (Oct. 30, 2012) (noting that Mr. Jalona was the final reviewer for Mr. Handloser's CRR score) (Ex. 5)

[36] Despite failing to preserve documents from these two critical witnesses, Infosys argues that no genuine dispute of fact exists as to whether Mr. Handloser was terminated for failure "to meet

Kelly Parker and expressed shock when she was terminated given the high quality of her work.[37] *See* Note 7, *supra.* Thus, Plaintiffs have been prejudiced.

4. *Infosys' Breach of Its Duty to Preserve Was Caused by Willfulness, Bad Faith, or Fault*

"[O]nce a party is on notice that evidence in their possession is relevant to the pending litigation, the failure to prevent its destruction or failure to ensure its preservation moves from being negligent to bad faith. This can be true even when destruction of such evidence is part of a routine policy." *Porche v. Oden*, No. 02 C 7707, 2009 U.S. Dist. LEXIS 15640, at *23 (N.D. Ill. Feb. 27, 2009); *accord Jones*, 2010 U.S. Dist. LEXIS 51312, at *26 ("Gross negligence of the duty to preserve material evidence is generally held to be fault."). Gross negligence occurs when, for example, a defendant relies on its own self-interested employees to secure relevant documents, and when a defendant fails "to obtain documents from" key employees "at the first sign of litigation." *Jones*, 2010 U.S. Dist. LEXIS 51312, at *27; *accord Northington v. H&M Int'l*, No. 08-CV-6297, 2011 U.S. Dist. LEXIS 14366, at *50-51 (N.D. Ill. Jan. 12, 2011). Gross negligence also occurs when a party issues a hold, but fails to take affirmative steps to confirm evidence is preserved, and the evidence is subsequently lost or destroyed through routine overwriting practices. *Cahill*, 2016 U.S. Dist. LEXIS 169195, at *19; *accord Liberty Mut. Ins. Co. v. Ecowater*

---

Infosys's legitimate performance expectations." Defs.' Summ. J. Mem. at 32 (Dkt. #80).

[37] Despite failing to preserve Mr. Weber's documents, Infosys offers the declaration of Giridher Thorangallu to suggest that no genuine dispute of fact exists that Ms. Parker was bad at her job and not qualified for the permanent Helpdesk position for which she applied and interviewed in 2012. Defs.' Statement of Facts ¶¶ 76-77 (Dkt. #79). But Mr. Thorangallu did not even work in the same location as Ms. Parker, and did not observe her work or otherwise interact with her. Pls' Resp. to Defs.' Statement of Facts ¶ 77 (pp. 81-82) (Dkt. #94).

*Sys., Inc.*, No. 02 C 50415, 2004 U.S. Dist. LEXIS 8415, at *4 (N.D. Ill. May 11, 2004) (finding fault where party "had the authority and ability to preserve the [evidence] but failed to do so").[38] "[F]ailure to make an adequate search for relevant documents before destroying non-relevant documents is further evidence of its bad faith." *Wiginton*, 2003 U.S. Dist. LEXIS 19128, at *24. In the Seventh Circuit, the question of whether a party has destroyed evidence in bad faith may appropriately be left to the jury. *Johnson v. Nichols*, No. 12 C 5325, 2013 U.S. Dist. LEXIS 113112, at *9 (N.D. Ill. Aug. 12, 2013).

Here, Infosys was at fault, *i.e.*, at least grossly negligent, for failing to collect documents "at the first sign of litigation" in 2012 or 2013, for failing to suspend email deletion from servers and backup tapes, for relying on self-interested employees to preserve their own documents without adequate oversight, for not conducting a timely search and collection of timely documents, and for allowing the destruction of documents from important custodians. *Jones*, 2010 U.S. Dist. LEXIS 51312, at *27; *Northington*, 2011 U.S. Dist. LEXIS 14366, at *50-51, 59; *Wiginton*, 2003 U.S. Dist. LEXIS 19128, at *23-24; *Cahill*, 2016 U.S. Dist. LEXIS 169195, at *17-19; *Liberty Mut. Ins.*, 2004 U.S. Dist. LEXIS 8415, at *4.

### 5. *Appropriate Sanctions for Infosys' Failure to Preserve*

"The court has broad discretion to fashion an appropriate sanction" for a failure to preserve evidence. *Jones*, 2010 U.S. Dist. LEXIS 51312, at *30. Appropriate sanctions for a failure to preserve documents may include, for example, permitting additional discovery, awarding attorneys' fees, informing the jury of the failure to preserve, precluding a party from introducing evidence on a certain issue, or issuing an adverse inference jury instruction. *Id.* at *30-31. As

---

[38] "Fault" in this context relates not to subjective intent but to the reasonableness of the conduct. *Langley by Langley v. Union Elec. Co.*, 107 F.3d 510, 514 (7th Cir. 1997).

21

reflected in the accompanying proposed order, Infosys should be compelled to produce all documents responsive to Requests 1-3 of Plaintiffs Third Set of Document Requests (Ex. 26), including documents sufficient to show the steps it took to preserve documents, the dates, recipients, and contents of litigation hold notices, and identification of document and email servers used by relevant custodians and any steps taken to pull backup tapes from these servers (or otherwise preserve their contents).[39] Second, Infosys should be ordered to conduct a supplemental search for documents from Sanjay Jalona, Rohit Kedia, Chris Weber, and any other custodian whose documents have not been fully preserved, and seek the return of any Infosys ESI and

---

[39] There is no reasonable argument that these materials are not discoverable, particularly in light of Infosys' indisputable failure to preserve evidence in this case. *See United States ex rel. Barko v. Halliburton Co.*, 74 F. Supp. 3d 183, 191-92 (D.D.C. 2014) (holding that "[a] party may discover the steps the opposing party has taken to preserve relevant information" and noting the litigation hold notices were not work product as they reflected defendant's "document retention practices, rather than [] any attorney's preparations for litigation."); *Tate & Lyle Ams., LLC v. Glatt Air Techniques, Inc.,* No. 13–2037, 2014 U.S. Dist. LEXIS 184533, at *6-7 (C.D. Ill. Aug. 4, 2014) (ordering production of litigation hold letters when party failed to issue the hold "until over three years after it anticipated litigation" and opposing party produced sufficient evidence "to support a reasonable inference that relevant evidence" [was] destroyed"); *Home Instead, Inc. v. Florance,* No. 8:12CV264, 2013 U.S. Dist. LEXIS 163291, at *7-8 (D. Neb. Nov. 8, 2013) (granting plaintiff's motion to compel "a sworn affidavit outlining whether a litigation hold was put in place, the people to whom a litigation hold letter was sent, the directions for preservation, the sources identified for search, the terms used for the search, Defendants' continued efforts to ensure compliance, and any other information relevant to the scope and depth of the preservation or search for documents" in response to defendants' inadequate discovery responses and allegations of possible destruction of materials); *Magnetar Techs. Corp. v. Six Flags Theme Park, Inc.,* 886 F. Supp. 2d 466, 490 (D. Del. 2012) (ordering production of the litigation hold letter on showing of spoliation); *Cannata v. Wyndham Worldwide Corp,* No. 2:10–cv–00068, 2011 U.S. Dist. LEXIS 88977, at *8-9 (D. Nev. Aug. 10, 2011) (holding that when and to whom litigation hold notices were sent was discoverable); *United Med. Supply Co. v. United States*, 77 Fed. Cl. 257, 262 (Fed. Cl. 2007) (ordering defendant to produce "copies of any general notices sent ... requesting or relating to the preservation of relevant documents" upon a finding that documents had been destroyed).

22

documents still in Mr. Jalona's possession.[40] Third, Plaintiffs should be permitted to take necessary depositions following production of the foregoing materials. Fourth, Plaintiffs should be permitted to present to the jury evidence of Infosys' failure to comply with its discovery obligations. Finally, Plaintiffs should be awarded attorneys' fees and costs incurred in drafting and arguing the present motion, and taking and reviewing the above-referenced discovery.[41]

## B. Infosys Should Be Sanctioned for Failing to Produce the PeopleFluent Documents

"[A] culpable failure to produce documents in response to a request to produce can be the basis for sanctions under Fed. R. Civ. P. 37(d)." *David Mizer Enters.*, 2016 U.S. Dist. LEXIS 117076, at *8 (citations omitted); *see also Gray*, 2000 U.S. Dist. LEXIS 7207, at *14-15 (imposing sanction under Rule 37 and the court's inherent authority for belated production of evidence "[e]ven treating as inadvertent the city's failure to produce"). When a party inaccurately represents that its document production is complete or that no responsive documents exist, and the representation is not based on a reasonable inquiry, Rule 26(g) sanctions are appropriate. *Nationwide Agribusiness*, 2016 U.S. Dist. LEXIS 8289, at *12 (awarding fees as sanction under Fed. R. Civ. P. 26(g)(3) and 37(c)(1) for failure to make timely disclosure). The test for whether an inaccurate representation about discovery is sanctionable under Rule 26(g) is one of objective

---

[40] *Cf.* Fed. R. Civ. P. 37(e), Comm. Note ("When a party fails to take reasonable steps to preserve electronically stored information that should have been preserved in the . . . conduct of litigation, and the information is lost as a result, Rule 37(e) directs that the initial focus should be on whether the lost information can be restored or replaced through additional discovery.").

[41] *Jones*, 2010 U.S. Dist. LEXIS 51312, at *31; *Cahill v. Dart*, No. 13-cv-361, 2016 U.S. Dist. LEXIS 166831, at *14-15 (N.D. Ill. Dec. 2, 2016) ("Because the Court grants Cahill's motion for sanctions, he is entitled to attorney's fees incurred in making the motion."); *Nationwide Agribusiness Ins. Co. v. Meller Poultry Equip., Inc.*, No. 12-C-1227, 2016 U.S. Dist. LEXIS 8289, at *12 (E.D. Wisc. Jan. 22, 2016); *In re Delta/AirTran Baggage Fee Antitrust Litig.*, 846 F. Supp. 2d 1335, 1352-53 (N.D. Ga. 2012); *Gray v. City of Columbus*, No. IP98-1395, 2000 U.S. Dist. LEXIS 7207, at *15-16 (S.D. Ind. Jan. 31, 2000).

reasonableness under the circumstances. *Id.* at *8 (citing *FDIC v. Tekfen Const. & Installation Co.*, 847 F.2d 440, 442 (7th Cir. 1988)). If a party inaccurately represents that "its discovery responses were correct and complete," and if the representation causes unnecessary delay and an increase in costs, Rule 26(g) sanctions are appropriate, and late production of the documents by the party is "immaterial." *In re Delta/AirTran*, 846 F. Supp. 2d at 1350 (collecting cases).

Here, Plaintiffs' document request clearly encompassed the PeopleFluent analyses. Pls.' First Set of RFPs at Request No. 5 (Ex. 28); Discovery Chart at Request No. 5 (Ex. 30). Infosys knew all along about the PeopleFluent analyses, which were always within Infosys control. Minute Sheet at 2 (Dkt. #120). Infosys' counsel admitted that she considered producing the PeopleFluent analyses, but chose not to do so – even though they were clearly responsive. Rather, she asserts that she withheld them because she believed – contrary to basic principles of document discovery and the explicit instructions in the requests – that it was sufficient to produce data that formed the bases of the analyses. Von Klemperer Decl. ¶¶ 2-3 (Ex. 12). Infosys' counsel then represented to Plaintiffs that it had no additional documents responsive to Plaintiffs' document request No. 5. *See* Note 16, *supra.*

Infosys' actions and representations were not objectively reasonable, and violated Infosys' discovery obligations under Rules 26(g) and 37(d). Infosys did not self-correct these failures. Rather, Plaintiffs learned about the PeopleFluent documents from a third party, promptly subpoenaed PeopleFluent, and were forced to negotiate for months with PeopleFluent to obtain responsive documents. *See* Note 25, *supra.* During this time, Infosys did not acknowledge the existence of responsive PeopleFluent documents in Infosys' control, even in response to a direct inquiry from Plaintiffs. *See* Note 24, *supra.* Rather, Infosys waited until after PeopleFluent produced responsive documents to acknowledge that Infosys possessed the PeopleFluent analyses.

*But see Rosenthal*, 2011 U.S. Dist. LEXIS 17623, at *21 ("Litigants cannot be permitted to say 'oops, you've caught me, and thereafter be allowed to continue to play the game. . . .'") (quoting *Dotson v. Bravo*, 202 F.R.D. 559, 573 (N.D. Ill. 2001)).

As discussed above, had Plaintiffs known about the PeopleFluent analyses in a timely fashion after issuing document requests, it would have significantly shaped discovery, saved significant time and resources that Plaintiffs and Dr. Neumark were forced to expend understanding Infosys' "barn yard" of raw data, avoided the expense and lengthy negotiations Plaintiffs were forced to incur negotiating with a third party for documents Infosys had in its control all along, and potentially shortened the case (by affecting the timing and content of Plaintiffs' motions for summary judgment and class certification).

Accordingly, as set forth in the accompanying proposed order Infosys should be compelled to produce documents and ESI related to its affirmative action program, including data provided to and received from PeopleFluent, communications with PeopleFluent, documents regarding placement goals, and communications among Infosys' affirmative action anchors and steering committee members regarding its affirmative action program and efforts. *See* Note 40, *supra*; Minute Sheet at 2 (Dkt. #120) ("Court directs defendant to produce all documents plaintiff requests."). Further, Plaintiffs should be permitted to take necessary depositions following production of the foregoing materials. *Id.* Finally, Plaintiffs should be award attorneys' fees and costs incurred taking and reviewing this discovery. *See* Note 41, *supra*.

## IV.    CONCLUSION

For the foregoing reasons, the Court should grant this motion and enter the accompanying proposed order.

Dated May 1, 2017.                                   Respectfully submitted,

                                                      /s/Daniel A. Kotchen
                                                      Daniel A. Kotchen
                                                      Daniel L. Low
                                                      Michael J. von Klemperer
                                                      KOTCHEN & LOW LLP
                                                      1745 Kalorama Road NW, Suite 101
                                                      Washington, DC 20009
                                                      (202) 471-1995
                                                      (202) 280-1128 (Fax)
                                                      dkotchen@kotchen.com
                                                      dlow@kotchen.com
                                                      mvk@kotchen.com

                                                      Michael F. Brown
                                                      DVG LAW PARTNER LLC
                                                      P.O. Box 645
                                                      Neenah, WI 54957
                                                      920-238-6781
                                                      920-273-6177 (fax)
                                                      mbrown@dvglawpartner.com

                                                      Attorneys for Plaintiffs