## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| **BRENDA KOEHLER,**<br>**KELLY PARKER,**<br>**LAYLA BOLTEN &**<br>**GREGORY HANDLOSER**<br><br>        **Plaintiffs,**<br><br>**v.**<br><br>**INFOSYS TECHNOLOGIES LIMITED,**<br>**INC., and INFOSYS PUBLIC SERVICES,**<br>**INC.**<br><br>        **Defendants.** | **Case No. 2:13-cv-885-PP** |

## DEFENDANTS' BRIEF IN OPPOSITION TO
## PLAINTIFFS' MOTION FOR SANCTIONS AND TO COMPEL

# I. <u>INTRODUCTION</u>

In the midst of a conferral about their suddenly renewed interest in the electronically stored information ("ESI") of three current or former Infosys employees and gathering yet more documents relating to PeopleFluent affirmative action plans, Plaintiffs have asked this Court to sanction Infosys. Nowhere in their substantial filing—a 25-page brief with 40 exhibits—do Plaintiffs explain why they waited months after the close of discovery and briefing on class certification and summary judgment to seek sanctions based on long-running disputes (yet could not wait a single day past their preferred date for a particular conferral response). Nor do Plaintiffs explain what they intend to do with new discovery sought as "sanctions"—their broad requests for information ranging from Infosys communications about its affirmative action plans, to privileged documents reflecting Infosys preservation efforts, to unspecified depositions.

But several things remain clear. First, Rule 37(e) does not permit the spoliation sanctions that Plaintiffs demand. Indeed, Plaintiffs' position that Infosys should be sanctioned for loss (or partial loss) of ESI from the computer hard drives of (now) just two former employees out of the hundreds of custodians they have identified—and notwithstanding the approximately *2.7 million custodian emails* Infosys has already retrieved—largely rests on their own mis-statements about Infosys preservation efforts. And to the degree it does not, Plaintiffs would burden Infosys with an impossibility: an unsupported duty not just to preserve, but to physically collect ESI from the hard drives of more than one hundred employees "at the first sign of" their unprecedented, companywide allegations of reverse discrimination—a vast project that would have required Infosys to spend extraordinary time and perhaps millions of dollars within weeks of answering Plaintiffs' amended complaint.

Second, neither Rule 26(g) nor Rule 37(d) suggests any basis for imposing discovery sanctions relating to PeopleFluent affirmative action plans. Put aside that Infosys timely

produced these affirmative action plans, performance goals, and *all* related data. And put aside that Plaintiffs have failed to extract any relevant, non-duplicative information from those plans or some thousands of additional PeopleFluent documents. Rule 26(g) governs an attorney's certification of discovery responses through her signature, not every discussion that comes afterwards. And Rule 37(d) applies when parties fail to provide any response to discovery requests, not when they provide written responses and well-founded objections (let alone more than 800,000 pages of responsive documents and comprehensive data related to well over one hundred thousand applicants and employees). Claims that Infosys should be sanctioned for failing to edit a discovery mediation chart or providing "only" hundreds of Affirmative Action plans prepared by PeopleFluent in its original production ignore the plain terms of these rules.

And finally, Plaintiffs' motion comes too late. If they believed Infosys had lost or failed to disclose information relevant to class certification or their substantive claims, Plaintiffs should have asked for more time and discovery before the parties completed Rule 23, *Daubert*, and summary judgment briefing. Their inexplicable attempt to upend more than six months of class-related litigation instead amounts to unreasonable and therefore fatal delay.

In sum, Plaintiffs' Monday-morning rush to the courthouse—a filing that occurred hours before Infosys would have advised them of newly-recovered ESI and other efforts to resolve disagreements—was, in equal parts, premature and pointless. Plaintiffs' motion for sanctions and to compel should be denied.

## II.     BACKGROUND

### A.     Infosys acted reasonably in all aspects of its efforts to preserve ESI.

1.     Infosys immediately preserves ESI through litigation holds and reminders.

Six days after Plaintiffs filed their complaint on August 1, 2013, Infosys issued its first legal hold to numerous potential document custodians. (May 22, 2017, Declaration of Sarah

Wasson ¶ 3, attached hereto as Exhibit A (hereafter "Wasson Decl.")). By August 20, 2014, almost a year before any ESI was lost, Infosys had expanded its hold to include additional custodians, including then-employees Sanjay Jalona, Rohit Kedia, and Chris Weber—all of whom promptly acknowledged receiving the hold and promised to abide by it. (*Id.* ¶ 4). In addition, the electronic assets of hold recipients were tagged in an asset tracking system to automatically alert the people who redeployed laptops to preserve information should those custodians leave Infosys. (*Id.* ¶ 8). Even without the legal holds, Infosys did not automatically delete emails from employee in-boxes. (*Id.* ¶ 9). Beyond efforts that included issuing hold notices to more than 90 employees, Infosys retained relevant system data not subject to automatic deletion. (*Id.* ¶ 4; May 22, 2017, Declaration of Ellen Boshkoff ¶ 14, attached hereto as Exhibit B (hereafter "Boshkoff Decl.").).

2.      <u>Months before Plaintiffs identify 103 custodians, data from two is lost</u>.

Two of the hundreds of individuals Plaintiffs later identified as potential records custodians—Sanjay Jalona and Rohit Kedia—left Infosys in 2015. Though erroneously identified by one of Plaintiffs' witnesses as the Global Head of Talent Acquisition (Declaration of Samuel Marrero, ECF No. 94-4), Jalona was actually only the head of one of what once was 15 different business units that recruiters could interact with for hiring approval.[1] (Danforth Dep. 58:22-24, 60:21-61:14, Ex. C; Linquist Dep. 39:44-40, Ex. D). Rohit Kedia, a Group Engagement Manager, supervised Plaintiff Handloser from 2009 until mid-2011, when Handloser began reporting to Sudip Singh. (Singh Dep. 107:20-108:4, ECF No. 78-17; Handloser Dep. 42:24-44:18, ECF No. 78-16).

---

[1] Even within that business unit, recruiters would not necessarily interact with Jalona, but instead would get hiring approval from a sub-unit. (Danforth Dep. 61:15-62:3, Ex. C).

3

On August 6, 2015, just two days before Jalona left Infosys, a laptop he might have been using was reformatted in violation of Infosys's express instructions regarding document preservation. (Wasson Decl. ¶ 11; Boshkoff Decl. ¶ 24). In October 2015, around his departure, a laptop likely used by Kedia was also reformatted in violation of preservation instructions. (Boshkoff Decl. ¶ 20; Wasson Decl. ¶ 11).

**B.      Infosys Produces and Collects Vast ESI; Plaintiffs Raise Discovery Disputes.**

       1.      Plaintiffs serve overbroad discovery requests and Infosys responds.

In July 2015, Plaintiffs' served 20 broad requests for production of (among other things): "Documents and ESI relating to studies concerning the availability of Americans and/or non-Indians to fill positions in the United States" and "Documents and ESI relating to demographics or statistics of Infosys's United States workforce, including but not limited to, EEO reports, studies, or other documents reflecting the statistics of the workforce." (Boshkoff Decl. ¶ 2 and Ex. 1 (Plaintiffs' First Requests for Production of Documents Nos. 4, 5)).

Though objecting to (*inter alia*) vagueness and overbreadth, Infosys nonetheless produced (on November 24, 2015) its human resources and applicant tracking data relating to over 145,000 applicants and all U.S.-based employees for the relevant time period, including employment dates, compensation, race/ethnicity, position titles, project assignments, and applicant interviewing data. (Boshkoff Decl. ¶ 4 and Ex. 2 (Infosys's Amended Objections and Responses to Plaintiffs' First Requests for Production of Documents)).

To make the data easier to use and understand, Infosys included employee identification numbers in each spreadsheet for ready linking and analysis, (March 6, 2017, Boshkoff Decl. ¶ 3 (ECF No. 128-1); Siskin Supp. Rpt., 6 (ECF No. 125-2)), and Infosys also provided Plaintiffs with extraordinary help, including by way of specially created charts identifying each spreadsheet by name and category, a data dictionary defining all data fields provided, and "look

up tables" defining certain activity codes—going so far as to meet with Plaintiffs' counsel, in person, for several hours to explain the exemplars. (March 6, 2017, Boshkoff Decl. ¶¶ 4-13 (ECF No. 128-1); see also Neumark Rpt. App'x 6 (ECF No. 87-1) (identifying data dictionaries as information relied upon)). Infosys also provided (1) all relevant Affirmative Action Plans; and (2) all documents Infosys maintained as "required and supporting reports" related to those Affirmative Action Plans—more than 50,000 pages of documents prepared by its outside vendor, PeopleFluent. (Boshkoff Decl. ¶ 5).[2] These documents contained certain "placement goals" mandated by government contractor regulations. (*Id.*).

2. <u>The parties participate in a failed discovery mediation, ended by Plaintiffs.</u>

By early January 2016, Plaintiffs had raised concerns about virtually every one of Defendants' responses to the Requests for Production. To address the impasse, Judge Pepper referred the parties to Judge Joseph, who scheduled a March discovery mediation and required the parties to submit an outline of their positions on each issue. (ECF No. 49).[3] Apparently in response to the mediation order, counsel for Plaintiffs sent Infosys a chart, *which they created*, purporting to capture the status of various conversations regarding Infosys's discovery responses. (Boshkoff Decl. ¶ 8, Ex. 3 (Feb. 24, 2016, Letter from D. Kotchen to G. Stohner)). A conference with Judge Joseph followed, but did not resolve the various discovery issues. (*Id.* ¶ 9). Twice continued to allow more party discussions, a follow-up conference was ultimately scheduled for April 13, 2016. (*Id* ¶ 10; ECF No. 51).

In preparation for the conference, Infosys's counsel tried to capture the status of issues being discussed by revising the "Outstanding Issues" section in Plaintiffs' discovery chart to add

---

[2] These steps were only a few of the many Infosys took to address discovery issues raised by Plaintiffs. (*See* ECF No. 134-1 (Apr. 25, 2016, Ltr. from E. Boshkoff to Plaintiffs' counsel)).
[3] Infosys had asked to brief discovery issues because of "differing interpretations of what has occurred in various communications, . . . mak[ing] it all the more important that both parties explain their positions in writing." (ECF No. 44, p. 5).

5

a column entitled "Updates."  (Boshkoff Decl. ¶ 10).  Infosys made no changes to the two other

sections of Plaintiffs' chart.  (*Id.* ¶ 11).  Sending the chart, Infosys noted its hope the chart could

"narrow some of the issues that need to be presented to the court."  (*Id.* ¶ 10, Ex. 4).  As

Plaintiffs did not respond, the draft chart was never finalized or submitted.  (*Id.* ¶ 10).  At

Plaintiffs' insistence (and over Infosys's objection), the April teleconference was ended and the

discovery disputes returned to Judge Pepper for resolution.  (*Id.* ¶ 11; ECF No. 55).

### 3.    Magistrate Judge Jones mediates custodian dispute and Infosys complies.

On May 27, 2016, Magistrate Judge Jones assumed responsibility for handling pretrial

proceedings and began regular conference calls to address discovery issues.  (ECF No. 58).

During the first call, Plaintiff raised their interest in conducting discovery into Infosys's

document preservation, but were told no such discovery would be allowed absent evidence that

any document had "not been produced" or was destroyed.  (*Id.*).  For its part, Infosys expressed

concern about Plaintiffs' failure to identify preferred records custodians.  (*Id.*).  Thereafter,

Infosys reported regularly on its efforts to collect ESI while expressing frustration with

Plaintiffs' failure to agree upon a custodian list.[4]

As part of these efforts, Infosys began a systematic ESI *collection* project in mid-

2016.  In May 2016, Plaintiffs had proposed that Infosys collect ESI from 103 specifically

identified custodians (including Chris Weber, Sanjay Jalona, and Rohit Kedia), as well as some

groups of several hundred other employees, and proposed that Infosys use 140 different search

---

[4] *See, e.g.*, Minute Entries at ECF No. 60 (counsel for Infosys reporting Infosys had "tried to identify [custodians] based on the list provided" but "[f]eel [they] are dealing with moving target"); ECF No. 61 (counsel for Defendants "still not sure what Plaintiffs intend to do [with custodians]"; reporting that "proposals seen in the past have been for massive collection of ESI"); ECF No. 65 ("there are 104 different proposed custodians [and Defendants] [s]till haven't gotten more targeted list"; explaining further that collecting ESI is a labor intensive process and Infosys has "massive amounts of information"); ECF No. 68 (counsel for Defendant notes that Plaintiff's custodian list still contains "104 proposed custodians with multiple categories, which is not realistic or doable," but regardless, has started "working on the list right away because ESI takes time to collect"); ECF No. 69 (noting that the custodian "list is not feasible" and that defendant "never got list of viable search terms from plaintiff").

US.112032679.04

terms to cull potentially discoverable documents—an immense undertaking that Infosys reported was "not feasible." (Boshkoff Decl. ¶ 12 and Exs. 5, 6). Infosys estimated that proceeding one hard drive at a time, this collection would cost between $600,000-$4,000,000.[5] (*Id.* ¶ 13).

Despite Plaintiffs' failure to narrow or prioritize their custodian list for several months,[6] Infosys searched for and collected (where possible) the ESI of 34 custodians in May through July 2016. (Boshkoff Decl. ¶14). As of July 2016, *more than two months before the close of discovery*, Infosys reported to Plaintiffs that it had been unable to locate any useable ESI for Jalona, Kedia, or Weber.[7] (Wasson Decl. ¶ 10; Boshkoff Decl. ¶ 16, Ex. 9; ECF No. 68).

In July 2016, Plaintiffs narrowed their proposed a list of custodians to 33 people. (Boshkoff Decl. ¶ 17; ECF No. 68). Infosys explained that while it had already collected ESI for 7 of the 33 (and had no objections to searching those emails and producing responsive documents), collecting and producing ESI for the remaining 26 people would be impracticable. (Boshkoff Decl. ¶ 17). Judge Jones ordered Plaintiffs to narrow their list to eight to ten additional records custodians, resulting in a total of 15 to 17 custodians (*Id.* ¶ 18; ECF No. 69) and the collection of over a Terabyte of data, comprising about 2.7 million documents, after removing duplicates. (Boshkoff Decl. ¶ 19). Infosys also applied search terms and produced documents for at least 15 of those custodians. (*Id.*).

4.     Infosys produces all ESI for Chris Weber.

While trying to respond to the moving target of preferred records custodians, Infosys continued to search for difficult-to-obtain ESI, leading to discovery of ESI from Chris Weber and, in mid-to-late September 2016, to the discovery (in India) of reformatted laptop computers

---

[5] Plaintiffs also proposed overbroad search terms requiring review of nearly all documents in any custodian's ESI. Apply those terms to one custodian resulted in a 97% "hit" rate. (Boshkoff Decl. ¶ 13).
[6] Infosys requested that Plaintiffs narrow and/or prioritize their initial proposed custodian list in writing *at least* five times between May and August 2016 before Plaintiffs did so in response to Magistrate Judge Jones's direction.
[7] Infosys was unable to find laptops assigned to Kedia or Jalona or issued to Weber. (Wasson Decl. ¶ 10; Boshkoff Decl. ¶ 16).

US.112032679.04

that could have been assigned to Jalona and Kedia. (Boshkoff Decl. ¶¶ 21, 23; Wasson Decl. ¶ 11). Infosys determined there was no data on the device potentially assigned to Jalona and no recoverable data on the laptop potentially assigned to Kedia—findings consistent with Infosys's July 2016 representations to Plaintiffs that it had not been able to locate useable ESI for these custodians. (Boshkoff Decl. ¶ 24, Ex. 7 (Aug. 9, 2016, email from Plaintiffs' counsel noting their understanding that "no documents [had been] retained" for Jalona or Kedia)).

### C. **After Discovery Closes, Plaintiffs Raise Untimely Concerns.**

#### 1. Even after discovery, Infosys retains a computer forensics expert.

Fact discovery closed on September 16, 2016. (ECF No. 61). In October or November 2016, Plaintiffs raised—for the first time since May 2016, and four months after Infosys notified Plaintiffs it had been unable to locate ESI for Kedia, Jalona, or Weber—concerns regarding Infosys's document preservations efforts. (Boshkoff Decl. ¶ 22). Despite their untimely request, Infosys took the extraordinary step of retaining a *computer forensics expert* to search for recoverable data on laptops possibly assigned to Jalona and Kedia. (*Id.* ¶ 23). After the expert found no useable data on the Jalona laptop, and some potentially recoverable data on Kedia's, Infosys directed the vendor to extract the recoverable data for processing and review.[8] (*Id.* ¶ 24). Infosys has already agreed—and would have agreed notwithstanding Plaintiffs' pending motion—to produce any useable documents that it recovers. (*Id.*).

Although the parties continued to have discovery conferences with Judge Jones during the fall of 2016, at no point then or afterwards did Plaintiffs raise their ESI concerns with the Court.

#### 2. Plaintiffs raise untimely concerns about PeopleFluent documents.

---

[8] This data was transferred to Infosys on May 3, 2017. (Boshkoff Decl. ¶ 26).

US.112032679.04

In June 2016, having already received about 50,000 documents including all affirmative action plans from Infosys, Plaintiffs had issued a third-party subpoena to PeopleFluent, seeking documents in PeopleFluent's possession related to Infosys' Affirmative Action planning (to which Infosys did not object). (*Id.* ¶ 7). Though PeopleFluent prepared (and produced to Plaintiffs) various documents and data sets not previously produced by Infosys, all reflect a subset of data that is *less comprehensive* than the data produced to Plaintiffs in November 2015; as Infosys's expert has explained, that data allowed for no meaningful statistical analysis of alleged discrimination. (Siskin Supp. Rpt., p. 6, ECF No. 125-2).

In January 2017—six months after serving its subpoena, several months after fact discovery closed, and a month after it first received documents from PeopleFluent—Plaintiffs claimed Infosys should have produced additional PeopleFluent documents in response to their request for documents and ESI relating Infosys demographics. (ECF No. 112) Beginning in February, Infosys responded to the Court's January 30, 2017 instruction by producing ancillary and intermediate reports prepared by PeopleFluent of over 170,000 pages, all of which could be created from data that Infosys produced in November. (Boshkoff Decl. ¶ 27; Siskin Supp. Rpt. 6, ECF No. 125-2). Consistent with their limited data and narrow and regulation-dictated analysis (which does not even distinguish employees by "South Asian" race or "Indian" national origin), these documents have no bearing on analyses performed by Infosys's experts. (Siskin Supp. Rpt. 6, ECF No. 125-2; Guryan Supp. Rpt. 7-8 (Dkt. 125-1); *compare* Pls.' Mem. of Law in Opp. to Defs.' Mot. to Exclude Expert Rpt. of David Neumark 1 (ECF No. 123) (claiming that the PeopleFluent reports "contradict" Infosys's experts)). Nor do they supply any means of shaping or shortening discovery. Recent claims that Plaintiffs would have "taken discovery regarding the sources of" PeopleFluent data *having already been provided with more data* (and

tutoring on how to use it)—like claims that Plaintiffs' expert would have relied on PeopleFluent "methods" for basic computations (or even statistical analyses)—remain unexplained and unsupported by any expert opinion.

## III. ARGUMENT

### A. Plaintiffs did not satisfy their duty to confer under Local Rule 37.

Plaintiffs' motion for sanctions and to compel should be denied because it is premature: They cannot certify that "the parties are unable to reach an accord" following good faith efforts to resolve this dispute, as required by Local Rule 37. Indeed, Plaintiffs' Monday-morning rush to the courthouse occurred in the midst of Infosys's good faith efforts to reach an agreement. Demonstrating that good faith, Infosys's attorneys spoke with Plaintiffs' counsel about ESI discovery the very day of their conferral request, April 18, 2017, despite having heard nothing from Plaintiffs about this discovery issue since November 2016. (Boshkoff Decl. ¶ 28.) Upon receiving a discovery proposal two days later—and one that differed materially from earlier discussions—Infosys attorneys promptly advised Plaintiffs' counsel that their need to communicate with Infosys would prevent any response before the following week. (*Id.* ¶¶ 29-31). Infosys's counsel was still reviewing Plaintiffs' proposal the following Wednesday, when Plaintiffs' counsel sent an email requesting a "response this week." (*Id.* ¶ 32.) But rather than make *any further attempt to communicate*—and despite knowing about the underlying discovery issues for between three and ten months—Plaintiffs filed a 25-page motion for sanctions (attaching 40 exhibits) the following Monday at 7:47 a.m., just hours before Infosys and its counsel met to prepare a response. (*Id.* ¶¶ 32-33; ECF No. 134).

This premature filing (*just seven business days* after Plaintiffs' written proposal) prevented Infosys from sharing its own proposal. More specifically, Infosys was preparing to

provide additional information relating to each of the three document custodians addressed in Plaintiffs' motion, including:

- The ESI of Chris Weber;

- The laptop of Sanjay Jalona (compare Pls.' Memo. of Law in Supp. of Pls.' Mot. for Sanctions and to Compel, Dkt. 135 ("Pls.' Br."), 6 ("Infosys apparently has not made any effort to require Mr. Jalona to return his Infosys laptop")); and

- The laptop of Rohit Kedia.   (*Id.*).

And in the brief time that has elapsed since, Infosys has advised Plaintiffs that ESI relating to Weber (*i.e.*, all relevant documents) was produced months earlier, that Infosys retained an expert to conduct forensic analyses of laptops reportedly assigned to Jalona and Kedia, and that the expert has been able to recover some data from what appears to be Kedia's email box. Infosys has also offered, well beyond its obligations under Rule 26, to provide additional discovery of documents relating to PeopleFluent Affirmative Action documents.

Chronologies like this are the very reason that Rule 37 and Local Rule 37 require good faith attempts to resolve disputes *before* parties file discovery motions with the Court. Even had Plaintiffs mistaken a one-day delay for the categorical rejection of their proposal—and despite having allowed Infosys just eight days to resolve issues that had lingered for months—they could *and should* have confirmed that interpretation. Substituting a 25-page motion for a follow-up email suggests a material disregard for judicial and party resources. Under the plain terms of Rule 37, Plaintiffs' motion should therefore be denied. *See, e.g.*, *Remy Inc. v. Tecnomatic, S.P.A.*, No. 1:11-cv-00991, 2013 WL 1311095, at *3-4 (S.D. Ind. Mar. 26, 2013) (denying sanctions because defendant failed to comply with Local Rule 37's duty to meet and confer).

US.112032679.04

## B.   Plaintiffs identify no basis for spoliation sanctions under Rule 37(e).

Plaintiffs' request for spoliation sanctions also fails on the merits.  Having filed a nationwide, across-the-board challenge to virtually all employment practices at Infosys (*i.e.*, its decisions to hire, fire, and promote employees), Plaintiffs want the Court to sanction ESI loss relating to just *two* out of the *hundreds* of "custodians" they deem to possess relevant information.  And they base this request on nothing more than: 1) their own inaccurate statements about Infosys's *preservation* efforts; and 2) the bald assertion that Infosys should have completed a massive ESI *collection* effort—in effect, should have spent millions of dollars on data retrieval—just weeks after Infosys answered the second amended complaint (and months before Plaintiffs made any attempt to identify the custodians from which Plaintiffs wanted Infosys to collect data).  These claims do not come close to permitting Rule 37 sanctions.  Under Rule 37(e), sanctions could be imposed only if Infosys acted unreasonably, Plaintiffs were prejudiced, and those sanctions were no more than necessary to cure prejudice—none of which can be demonstrated here.

### 1.   Infosys took reasonable steps to preserve and produce relevant ESI.

Plaintiffs' sanctions motion fails because Infosys took reasonable steps to preserve and produce relevant ESI.  As a threshold matter, Plaintiffs' repeated references to the Court's inherent authority to impose sanctions for lost ESI ignore the 2015 Amendments to Rule 37.  *See, e.g.*, Pls.' Br. 15 n.32.  Rule 37(e) now provides:

> (e) Failure to Preserve Electronically Stored Information. If electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost <u>because a party failed to take reasonable steps to preserve it</u>, and it cannot be restored or replaced through additional discovery, the court:
>
> (1) <u>upon finding prejudice to another party from loss of the information</u>, may order measures <u>no greater than necessary to cure the prejudice</u>; or

12

  (2) <u>only upon finding that the party acted with the intent to deprive</u> <u>another party of the information's use in the litigation may</u>:

  (A) presume that the lost information was unfavorable to the party;
  (B) instruct the jury that it may or must presume the information was unfavorable to the party; or
  (C) dismiss the action or enter a default judgment.

Fed. R. Civ. P. 37(e) (emphasis added). The 2015 Committee Notes affirm what the text itself makes clear: New Rule 37(e) "authorizes and specifies measures a court may employ if information that should have been preserved is lost, and specifies the findings necessary to justify these measures." The Rule "therefore forecloses reliance on inherent authority or state law to determine when certain measures should be used." Fed. R. Civ. P. 37 advisory committee's notes (2015 amendment). In short, the loss of ESI is *not* sanctionable absent a showing that a party failed to "take reasonable steps to preserve it."

  Here, Plaintiffs have made no serious effort to show a lack of reasonable steps by Infosys. Though vaguely asserting "numerous relevant documents were undoubtedly lost or destroyed," Plaintiffs specifically complain about ESI for only *three* out of the *hundreds* of custodians that they have variously identified (and notwithstanding the over one Terabyte of ESI Infosys has collected to date). And shrinking even that narrow complaint, Infosys has already produced the ESI from one custodian and has now recovered all or partial ESI from another. Nor do Plaintiffs explain why this relatively small loss of ESI—laptop data from former employee Jalona and some from Kedia—warrants sanctions. Seventeen pages into their brief, Plaintiffs finally identify what they deem unreasonable: a purported failure "to cease the deletion of email and the recycling of backup tapes, and … to make a copy of relevant custodians' files after [Infosys's] duty to preserve was triggered." Pls.' Br. 17. But this insupportable claim rests on a mish-mash of erroneous "facts" and irrelevant law.

13

Begin with the facts.  Contrary to the accusations in Plaintiffs' brief, Infosys:

- *Did* issue litigation holds requiring preservation of all relevant ESI to numerous custodians on August 7, 2013, and to additional custodians including Jalona and Kedia (neither identified in the original complaint) on August 20, 2014; (Wasson Decl. ¶¶ 3-4; *cf.* Pls.' Br. 5 n.8 ("The only step apparently taken by Infosys in 2013, 2014, or 2015 was to send a notice of the litigation to an undisclosed list of potentially relevant custodians in 2013 (and in later years to some additional custodians), and may have given undisclosed directions about preservation"));

- Did *not* use an email system that automatically deletes any emails from these or other employees' in-boxes; (Wasson Decl. ¶ 9; *cf.* Pls.' Br. at 4 ("[A]t the start of the case, Infosys did not stop the automatic deletion of emails");

- Did *not* automatically delete files of employees subject to a litigation hold two weeks after departure from Infosys; (Wasson Decl. ¶ 9; *cf. id.* at 1 ("When an employee leaves Infosys, the company automatically deletes all of that employees' files after two weeks");  and

- Did *not* maintain accessible back-up tapes, but instead used tapes only for purposes of disaster recovery and recycled them every seven days; *cf. id.* at 4-5 ("[Infosys] did not pull backup tapes from its email and file servers (resulting in the tapes being overwritten)") (Boshkoff Decl. ¶ 29).

And beyond litigation holds and systematic efforts to *preserve*, Infosys expended substantial resources to *collect* information stored on the hard drives of individual custodians' computers. Plaintiffs are correct that Infosys declined to launch a monumental data retrieval effort on or before receiving their Amended Complaint in 2013; but faced with a demand that it retrieve ESI

14

from 103 specific custodians (including Jalona and Kedia) and groups with hundreds more in May 2016—a project with estimated processing costs alone of between $600,000-$4,000,000—Infosys began systematic ESI collection in April 2016, ultimately amassing over a Terabyte of electronic data from custodial hard drives or *about 2.7 million emails*. To accuse Infosys of acting "unreasonably" is to deny basic facts.

Plaintiffs' claims of "unreasonableness" also fail as a matter of law. Rather than address what Infosys did—*i.e.*, its litigation holds, vast document collection efforts, and production of *all* relevant demographic data—Plaintiffs cite decisions that sanction employers for doing something else. Quoting *Jones v. Bremen High School*, for example, Plaintiffs seem to impugn litigation holds, calling it "unreasonable to allow a party's interested employees to make the decision about the relevance of . . . documents, especially when those same employees have the ability to permanently delete unfavorable email from a party's system." No. 08 C 3548, 2010 WL 2106640, at *7 (N.D. Ill. May 25, 2010). What *Jones* found unreasonable, however, was not a "litigation hold" but its absence. *Id.* The employer in *Jones* had asked particular employees to collect emails they alone deemed relevant—a process conducted without even the remote guidance of counsel. *Id.* Plaintiffs cite *Cahill v. Dart* (a case that does not involve ESI) to assert that failing to suspend an automatic deletion policy breaches a duty to preserve; but Infosys does not automatically delete email *even without a litigation hold*. No. 13 C 361, 2016 WL 7093434 (N.D. Ill. Mar. 4, 2016); *see also Plunk v. Vill. of Elwood, Ill.*, No. 07 C 88, 2009 WL 1444436, at *14 (N.D. Ill. May 20, 2009) (finding absence of any ESI policy and failure to place any sort of litigation 'hold' on the ESI after being informed that it should be produced was reckless). Equally beside the point, *Pension Committee of the University of Montreal Pension Plan v. Banc of America Securities, LLC* is cited for the proposition that a party acts unreasonably if it fails "to

15

preserve the records of former employees that are in a party's possession, custody, or control[.]" 685 F. Supp. 2d 456, 471 (S.D.N.Y. 2010) (finding the "plaintiffs failed to timely institute written litigation holds and engaged in careless and indifferent collection efforts after the duty to preserve arose"), *abrog. by Chin v. Port Auth. of New York & New Jersey*, 685 F.3d 135, 162 (2d Cir. 2012) ("We reject the notion that a failure to institute a 'litigation hold' constitutes gross negligence *per se*."). Yet any loss of ESI relating to Jalona or Kedia did not occur because Infosys failed to prevent destruction of files in its custody after their departure; it occurred because someone violated specific Infosys directives to preserve ESI.

Plaintiffs' reliance on inapt authority—almost all of which pre-dates the 2015 Amendments to Rule 37—continues with their claim that Infosys should have preserved back-up tapes maintained solely to allow "disaster recovery." Cases cited by Plaintiffs address "accessible" backup tapes; the law is clear, however, that litigation holds and other reasonable preservation efforts generally do "not apply to inaccessible backup tapes (*e.g.*, those typically maintained solely for the purpose of disaster recovery), which may continue to be recycled on the schedule set forth in the company's policy." *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 218 (S.D.N.Y. 2003). Nor does Plaintiffs' insistence that Infosys should have copied its discovery-recovery tapes otherwise make sense: the limited size of Infosys "in-boxes" requires employees to regularly transfer emails to hard drives; in comparison, any backup tape retrieved at any time *during the seven-day recycling period* would contain only a relative few.

In the end, Plaintiffs are left to declare Infosys's preservation efforts unreasonable because they are imperfect. Pls.' Br. 17 (preservation duties are "breached when evidence in a party's control is lost."). But not just unsupported by their authority (*Cahill*, *Jones*, or *Plunk*),[9]

---

[9] None of these cases involved a litigation hold on ESI. *Cf. Northington v. H&M Int'l*, No. 08-CV-6297, 2011 WL 663055, at *16-17 (N.D. Ill. Jan. 12, 2011) (preservation request excluding ESI, and without litigation hold held

this strict liability contradicts the plain terms of Rule 37.  Fed. R. Civ. P. 37(e) (allowing sanctions if ESI "is lost *because* a party failed to take reasonable steps to preserve it").  As the advisory notes point out, "reasonable steps" do not require "perfection"; in fact, the "ever-increasing volume" of ESI makes "preserving all relevant electronically stored information [] often impossible."  Fed. R. Civ. P. 37 advisory committee's notes (2015 amendment).  Here, moreover, Plaintiffs' version of perfection would not merely have involved efforts to copy documents stored by Kedia and Jalona; companywide class allegations would have required the impossible: collection of (among other things) *all* ESI on *all* hard drives used by *more than one hundred* custodians at a time when pleadings had been closed for *little more than a month*.[10] Indeed, Plaintiffs would improperly saddle Infosys with a *preservation* duty far more onerous than any burden imposed through discovery itself.  *See generally* Fed. R. Civ. P. 26(b)(1) (limiting discovery to what is relevant and proportional to case needs considering, inter alia, whether burden or expense "outweighs its likely benefit"); Fed. R. Civ. P. 37 advisory committee's notes (2015 amendment) ("Another factor in evaluating the reasonableness of preservation efforts is proportionality.").  And proving as much, Infosys has never been required to undertake this mammoth collection project despite the multiple conferences on custodians and data retrieval already held by the Court.[11]

In sum, Plaintiffs identify no support—in fact or law—for their claim that Infosys failed to take reasonable efforts to preserve the vast quantities of ESI they deem relevant to

---

unreasonable) (cited by Plaintiffs); *Liberty Mut. Ins. Co. v. Ecowater Sys., Inc.*, No. 02 C 50415, 2004 WL 1073687, at *2 (N.D. Ill. May 12, 2004) (finding fault in failure to preserve a water heater in its control) (cited by Plaintiffs).

[10] Someone (presumably Jalona) "wiped" the laptop assigned to Jalona on August 6, 2015; Infosys filed its Answer to the Second Amended Complaint barely a month earlier on June 6, 2015.

[11] To the contrary, Plaintiffs spent months equivocating about the custodians that they wanted to use for ESI collection, proposing a series of different custodians in the summer of 2016; after Plaintiffs selected the individuals they wanted to use (following Infosys's disclosure of which custodians had usable ESI and which did not), Infosys began its ESI production–which ultimately comprised several hundred thousand pages of documents. (Boshkoff Decl. ¶ 19).

companywide allegations of intentional discrimination.  Under the plain terms of Rule 37(e), their spoliation motion must be denied.

2.    Plaintiffs cannot show the prejudice required by Rule 37(e).

Plaintiffs' sanctions request also fails because they cannot show prejudice.  Though Plaintiffs declare "prejudice" inessential to any award of sanctions, Rule 37(e) says otherwise. Absent the specific intent to deprive another party of evidence, Rule 37 allows sanctions only "upon [a] finding [of] prejudice to another party from loss of the information" and only to the extent "necessary to cure the prejudice."  Fed. R. Civ. P. 37(e)(1).  In other words, sanctions are unwarranted unless lost ESI deprived Plaintiffs of material support for their claims.

Here, Plaintiffs cannot satisfy this standard.  They tout a former recruiter's allegations that Sanjay Jalona, an executive *in Manufacturing & Engineering Services*, instructed him to stick to "Indian candidates."  But credibility problems aside (including the mis-identification of Jalona as a head of recruiting), these allegations bear on an unpleaded discriminatory *recruitment* claim, rather than Plaintiffs' discriminatory hiring claims.  *See* Defs.' Opp. to Pls.' Mot. for Class Certification, Dkt. 103, 11, 27.  The other rationale for Jalona's relevance—his alleged role in Handloser's termination—is equally insufficient.  As Infosys's motion for summary judgment showed, Handloser was terminated through a companywide RIF, not executive fiat.  See Mem. in Support of Defs.' Mot. for Summ. J., Dkt. 80, 31-34.  Nor do the emails recovered from other custodians remotely suggest otherwise.  *See* Pls.' Br. 19 n.35.  And the larger problem with Plaintiffs' conjecture about prejudice remains: Any claim that emails from a single[12] manufacturing and engineering manager are needed to support allegations of (or arising from) purported systemic intentional discrimination across Infosys—and notwithstanding collection of

---

[12] As for ESI relating to Rohit Kedia, Plaintiffs' claims are premature in light of data recovered by Infosys.  In addition, Infosys has recovered ESI relating to Chris Weber and produced it.

some 2.7 million custodian emails and production of hundreds of thousands of documents—is facially incredible. Indeed, having known about the loss of ESI for almost a year, Plaintiffs themselves inexplicably failed to raise the issue during any subsequent discovery conference and sought no relief until certification and summary judgment briefing had closed.

Plaintiffs' speculation, in sum, is insufficient to establish that a relatively small loss of ESI has prejudiced their ability to prove discrimination. For that reason alone, Plaintiffs are not entitled to sanctions under Rule 37(e).

### 3. Rule 37(e) does not authorize the sanctions that Plaintiffs seek.

Plaintiffs' motion should also be denied because none of the sanctions it requests is permitted under Rule 37(e). They request, for example, that "evidence of Infosys' failure to comply with its discovery obligations" be put before the jury—a sanction that would allow jurors to "presume the [undiscovered] information was unfavorable" to Infosys. But even *permissive* adverse inference sanctions are permitted by Rule 37(e) "only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation." Rule 37(e)(B); Moores's Federal Practice - Civil § 37.121A ("The court may impose the most serious sanctions only on a finding that the party acted with the intent to deprive another party of the information's use in the litigation"). Here, Plaintiffs' failure to identify evidence that Infosys destroyed ESI intentionally, let alone for the specific purpose of withholding it, precludes sanctions under Rule 37. *See Faas v. Sears, Roebuck & Co.*, 532 F.3d 633, 644 (7th Cir. 2008) (finding "speculation that [documents] were destroyed to hide discriminatory information" insufficient).

Plaintiffs also ask that Infosys "be compelled to produce all documents responsive to Requests 1-3 of Plaintiffs Third Set of Document Requests (Ex. 26), including documents sufficient to show the steps it took to preserve documents, the dates, recipients, and contents of litigation hold notices, and identification of document and email servers used by relevant

custodians and any steps taken to pull backup tapes from these servers (or otherwise preserve their contents)." But this request for privileged communications has no apparent bearing on the limited ESI at issue here—*i.e.*, information previously stored on the laptops of Kedia and Jalona; it therefore violates the Rule 37(e) limitation that courts "order measures no greater than necessary to cure the prejudice." Infosys, moreover, has already disclosed its preservation efforts *to the extent not covered by attorney client privilege*[13] in correspondence and briefing, and has proceeded through a lengthy Court-assisted negotiation of relevant custodians/ESI, rendering this "sanction" unreasonably cumulative, duplicative, and moot. *See* Fed. R. Civ. P. 26(b)(2)(C)(i) (providing the Court "must limit the frequency or extent of discovery otherwise allowed . . . [when it is] unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive").[14]

Plaintiffs' request that Infosys "be ordered to conduct a supplemental search for documents from Sanjay Jalona, Rohit Kedia, Chris Weber, and any other custodian whose

---

[13] Legal hold letters and other document preservation methods are <u>not</u> discoverable to the extent they contain material protected by attorney-client privilege or the work product doctrine. *See Major Tours, Inc., et al. v. Colorel*, No. 05-3091, 2009 WL 2413631, at *3-5 (D.N.J. Aug 4, 2009) (emphasis added); *see also Muro v. Target Corp.*, 250 F.R.D. 350, 360 (N.D. Ill. 2007). Though suggesting privileged documents can be discovered as a sanction for spoliation, Plaintiffs cite cases (confined to a footnote) that address sanctions under *old* Rule 37(e) and in the context of large-scale and/or particularly egregious losses or destruction of evidence not at issue here. *See, e.g.*, *United States ex rel. Barko v. Halliburton Co.*, 74 F. Supp. 3d 183, 191-92 (D.D.C. 2014) ("[A]fter inspecting these particular litigation hold notices, the Court finds that they are distinguishable from the generic case, and are therefore discoverable."); *Tate & Lyle Ams., LLC v. Glatt Air Techniques, Inc.*, No. 13–2037, 2014 WL 10209161, at *2-3 (C.D. Ill. Aug. 4, 2014) (ordering disclosure of litigation hold letters delayed *more than three years* after it considered litigation, causing widespread destruction of documents); *Home Instead, Inc. v. Florance*, No. 8:12CV264, 2013 WL 5979629, at *2-3 (D. Neb. Nov. 8, 2013) (acknowledging while "typically the court would not require such a response to discovery," admissions of not looking for information, and shredding, selling, and discarding relevant documents warranted order requiring "a concerted effort to further respond to discovery"); *Magnetar Techs. Corp. v. Six Flags Theme Park, Inc.*, 886 F. Supp. 2d 466, 489-90 (D. Del. 2012) (allowing discovery into attorney-client privileged litigation hold letters due to the "extensive number of documents destroyed"); *Cannata v. Wyndham Worldwide Corp.*, No. 2:10–cv–00068, 2011 WL 3495987, at *2-3 (D. Nev. Aug. 10, 2011) (allowing inquiry into non-privileged preservation topics); *United Med. Supply Co. v. United States*, 77 Fed. Cl. 257, 261-63 (Fed. Cl. 2007) (ordering government to file its litigation notices after finding that entire agencies with a stake in the litigation were unaware of its existence).

[14] To the extent Plaintiffs alternatively seek this information through an untimely motion to compel, they make no such argument and almost wholly fail to address Infosys's objections. *See, e.g.*, *Clinchfield Ry. Co. v. Lynch*, 700 F.2d 126, 132 n.10 (4th Cir. 1983) (noting that objection shifts burden to requesting party to file motion to compel). Infosys's responses served on Sept. 19, 2016 objected, for example, that these requests were variously overbroad, unduly burdensome, not relevant or proportional, and protected by attorney-client and work product privileges.

20

documents have not been fully preserved, and seek the return of any Infosys ESI and documents still in Mr. Jalona's possession" is also moot and duplicative; this has already been done, as Plaintiffs would have discovered from conferral with Infosys.

And Plaintiffs' request for permission to "take necessary depositions following production of the foregoing materials" is, at best, premature. Rule 37(e) does not permit this relief unless and until Plaintiffs show a particular deposition is "necessary to cure . . . prejudice." *See generally CSC Holdings, Inc. v. Redisi*, 309 F.3d 988, 993 (7th Cir. 2002) (noting a court may refuse to compel depositions that would not help explore a "material issue.").

In short, the requested sanctions fall outside the scope of Rule 37(e) and must be denied.

**C.    Neither Rule 26(g) nor Rule 37(d) authorizes sanctions against Infosys for its discovery responses and communications relating to PeopleFluent.**

Plaintiffs' request for sanctions relating to "PeopleFluent documents" also fails on the merits. Though Plaintiffs claim Infosys violated the certification requirement of Rule 26(g), that requirement applies to responses to discovery requests, not every discussion that comes afterwards. And though Plaintiffs claim Infosys violated Rule 37(d) by excluding various PeopleFluent documents from a discovery response that included overbreadth objections *and all relevant data*, Rule 37(d) applies when a party has failed to provide any response at all. This is a sanctions demand in search of a rule authorizing sanctions. It must be denied.

**1.    Plaintiffs identify no basis for sanctions under Rule 26(g).**

Plaintiffs' attempt to apply Rule 26(g) to a discovery mediation chart—drafted by Plaintiffs—fails as a matter of law. Rule 26(g) applies to an attorney's certification of discovery responses through a signature. Fed. R. Civ. P. 26(g) ("Every disclosure under Rule 26(a)(1) or (a)(3) and every discovery request, response, or objection must be signed by at least one attorney of record in the attorney's own name—or by the party personally, if unrepresented—and must

21

state the signer's address, e-mail address, and telephone number."). As committee notes clarify, this "certification speaks as of the time it is made." Fed. R. Civ. P. 26 advisory committee's notes (1983 amendment). An attorney signature on a party's responses to a request for production thus certifies, *as of the signature date*, that responses and objections are consistent with the federal rules and warranted by law. Fed. R. Civ. P. 26(g)(1)(B)(i).

Here, the certification in question appeared on Infosys's August 26, 2015 discovery responses and objections. Addressing a request for *all* "[d]ocuments and ESI relating to the demographics or statistics of Infosys' United States work force, including, but not limited to, EEO reports, studies, or other documents reflecting the statistics of the workforce":

- Infosys specifically objected (among other things) to its overbreadth in reaching positions other than "base hires," and that "the term 'statistics of the workforce' <u>renders the request vague and ambiguous</u>";

- with respect to its call for ESI, Infosys invited "Plaintiffs to meet and confer regarding appropriate search terms and custodians, pursuant to Seventh Circuit protocol"; and

- Infosys agreed to produce responsive EEO-1 reports as well as other specific documents.

(*See* Boshkoff Decl. Ex. 3 (Infosys Limited's Am. Response to Pls.' First Request for Prod. of Documents, Response No. 5 (emphasis added))).

Foreclosing Rule 26(g) sanctions, none of this has been challenged by Plaintiffs. And what Plaintiffs want sanctioned instead—a failure to edit one line on a multi-page discovery chart *they themselves created*—is not a certification of any kind. Indeed, the very context of this chart (and two-line transmission email) makes non-sense of Plaintiffs' argument that it triggers

22

Rule 26(g):  The chart was used in a discovery mediation intended to address (*inter alia*) Infosys'

objections about vagueness and overbreadth.  It was a multi-page summary of "the status of its

response to each document request" created by Plaintiffs, and edited by Infosys only by revising

the "Outstanding Issues" portion and adding a column for "Updates."[15]  And it was not even

final, but reflected (as Plaintiffs' initial email notes) *on-going negotiations between the parties*.

Exh 30.  Putting aside the missing signature, a single sentence under "Infosys's Description of

Responsive Documents" to Request No. 5 could represent—at most—Infosys's understanding of

what documents would be produced at a particular stage in the negotiation; it could not possibly

certify that no other documents might fit terms Infosys had already called "vague" and

"overbroad."  Exh. 31.  *See generally Sheets v. Yamaha Motors Corp., U.S.A.*, 849 F.2d 179, 186

(5th Cir. 1988) (stating that Rule 26(g) "applies exclusively to discovery requests, responses, and

objections"). *Cf. Phinney v. Paulshock*, 181 F.R.D. 185, 203–04 (D.N.H. 1998), *aff'd sub nom.*

*Phinney v. Wentworth Douglas Hosp.*, 199 F.3d 1 (1st Cir. 1999) (finding original response to

discovery in the form of a letter "constitutes a 'certification' pursuant to Rule 26(g)(2)").[16]

Plaintiffs, in short, are not complaining about a discovery certification, let alone one that

violates Infosys's legal obligations.  They identify no basis for sanctions under Rule 26(g).

2.     Plaintiffs identify no basis for sanctions under Rule 37(d).

---

[15] The email recites, in full: "This is an updated discovery chart.  I am hopeful that we can use this to narrow some of the issues that need to be presented to the court." (Boshkoff Decl. ¶ 10).

[16] Plaintiffs' sole authority on correspondence in the context of a Rule 26(g) violation involves actionable *certifications* in original discovery responses and affirmance *of those certifications* in later correspondence.  *See In re Delta/AirTran*, 846 F. Supp. 2d 1335, 1350 (rejecting claim that "counsel made reasonable inquiries prior to signing the certifications" of response to document request and finding the problem compounded by unequivocal statements to the court that production was complete); *Metro. Opera Ass'n, Inc. v. Local 100, Hotel Employees & Rest. Employees Int'l Union*, 212 F.R.D. 178, 221 (S.D.N.Y. 2003) (finding "counsel's responses to the Met's discovery requests, in formal responses, in letters and to the Court—particularly counsel's repeated representations that all responsive documents had been produced—were made without any real reflection or concern for their obligations under the rules governing discovery…").  *Cf. Nationwide Agribusiness,* 2016 U.S. Dist. LEXIS 8289, at *12 (awarding fees as sanction under Fed. R. Civ. P. 26(g)(3) and 37(c)(1) for misleading supplemental disclosure).

US.112032679.04

Plaintiffs' request that the Court sanction Infosys under Rule 37(d)—a claim relating not to the discovery mediation chart, but to Infosys's production of fewer than all PeopleFluent documents in its original Request No. 5 response—is equally unsupported. Titled, "Party's *Failure to* Attend Its Own Deposition, Serve Answers to Interrogatories, or *Respond* to a Request for Inspection," Rule 37(d) addresses just that: a party's complete failure to *respond* to a discovery request. There is some split of authority on "whether Rule 37(d) sanctions may be imposed when a party has responded to interrogatories or a request for inspection, *but the response is so inadequate that it is tantamount to a complete failure to respond*." 7-37 Moore's Federal Practice - Civil § 37.91 (2016). *Cf. David Mizer Enters., Inc. v. Nexstar Broad., Inc.*, No. 14-cv-2192, 2016 WL 4541825, at *4 (C.D. Ill. Aug. 31, 2016) (addressing response that "Defendant does not have any documents which respond to this request"). But there is no argument that a response is sanctionable under Rule 37(d) merely because it falls short of "complete." Though Plaintiffs claim that an "[a]n "incomplete disclosure . . . must be treated as a failure to disclose" under Rule 37(a)(4), that provision "limits its own reach to subdivision (a)" and its maximum sanction of expense-shifting. 7 James Wm. Moore et al., Moore's Federal Practice § 37.91. Subsection (d), in contrast, exists outside Rule 37's "system of progressive discipline" and applies only to blatant discovery abuses nowhere alleged here. *Id.* at § 37.90 (distinguishing Rule 37(d) as applying to "the most blatant forms of discovery noncompliance" and allowing courts to sanction in the first instance).

Nor could Plaintiffs make any colorable claim that a production of all relevant data and over 50,000 pages of documents—including affirmative action plans with statutory performance goals—is tantamount to no production at all. In response to a request for *all* "documents and ESI relating to the demographics or statistics of Infosys' [U.S.] work force," Infosys timely:

- Produced (on November 24, 2015) its human resources and applicant tracking data relating to all applicants and employees for the relevant time period in 65 spreadsheets with employment dates, compensation, race/ethnicity, position titles, project assignments, and applicant interviewing data (Boshkoff Decl. ¶ 4);

- Produced the data in its "raw" form as kept in the ordinary course of business but included, with each spreadsheet, employee identification numbers allowing information to be readily linked and analyzed by Plaintiffs' expert (March 6, 2017, Boshkoff Decl. ¶ 3 (ECF No. 128-1); Siskin Supp. Rpt. 6 (Dkt. 125-2));

- Provided tutoring (at its own expense) through charts identifying each spreadsheet by name and category, a data dictionary defining all 407 data fields with "look up tables" defining certain activity codes, and through exemplars illustrating how the data could be used (March 6, 2017, Boshkoff Decl. ¶¶ 4-13 (ECF No. 128-1); *see also* Neumark Rpt. App'x 6 (Dkt. 87-1) (identifying data dictionaries as information relied upon);[17] and

- Provided PeopleFluent affirmative action plans ("AAPs") <u>containing analyses of "placement goals" and "utilization rates</u>." (Boshkoff Decl. ¶ 5).

Also contrary to Plaintiffs' claims here, this data production included more data than was given to PeopleFluent for its affirmative action analyses. (*Id.* ¶ 4).

Plaintiffs' claim, in short, that this mammoth production (what Plaintiffs call "incredibly voluminous" data) violates Rule 37(d) is baseless. Plaintiffs' motion must be denied.[18]

---

[17] Counsel also responded to multiple inquiries clarification of certain points as requested by Plaintiffs' counsel and met for hours to provide clarification. (March 6, 2017, Boshkoff Decl. ¶¶ 4-13 (ECF No. 128-1)). Plaintiffs' claim that "this raw data was …disaggregated, and difficult to understand" is unsupported and contradicted by the ability of Infosys's expert to produce his report without any of the tutoring provided to Plaintiffs.

[18] Contrary to claims that Infosys's counsel "admitted considering producing the PeopleFluent *analyses*, but chose not to do so…" (*see* Pls.' Br. 14 (emphasis added), counsel explained that when producing the data ultimately

3.    <u>More discovery would violate the proportionality requirement of Rule 26.</u>

Plaintiffs also fail to justify the specific sanctions they seek under Rule 26(g) and 37(d)—namely, "documents and ESI related to [Infosys's] affirmative action program, including data provided to and received from PeopleFluent, communications with PeopleFluent, documents regarding placement goals, and communications among Infosys' affirmative action anchors and steering committee members regarding its affirmative action program and efforts."  Pls.' Br. 25. Indeed, these requests abandon any semblance of Rule 26 proportionality.[19]  The record is clear that Infosys provided *all* data given to PeopleFluent—the outside vendor who prepares its regulation-mandated affirmative action plans—as well as affirmative action plans and performance goals with its original production, and that it subsequently produced an additional 170,000-plus pages of intermediate and ancillary reports such as "counts" and "roll-ups" of employees by race and location.  (Boshkoff Decl. ¶ 6).  Yet having devoted (now) three briefs to this subject, Plaintiffs remain unable to extract from this trove of data and documents a single relevant, non-duplicative fact.  As Infosys more fully explained in its class certification and *Daubert* briefs:

- The PeopleFluent "analyses" that purportedly "help demonstrate that Infosys discriminated" are not analyses at all, but "counts" by race of people hired, promoted, and terminated by Infosys—computations that provide no point of demographic comparison (*e.g.*, a racial breakdown of eligible or similarly situated employees) or control for variables other than race—nor have Plaintiffs offered any expert opinion to the contrary; (Siskin Supp. Rpt. 6 (ECF No. 125-2); *cf.* Pls.' Br. 8-9 ("PeopleFluent

---

provided to Plaintiffs, she decided not to replicate data given to PeopleFluent because it was incomplete and therefore insufficient.  Declaration of Rozlyn Fulgoni-Britton ("Fulgoni-Britton Decl."), Exhibit E, ¶¶ 5-7.

[19] Fed. R. Civ. P. 26(b)(2)(C)(i) (providing that the Court "must limit the frequency or extent of discovery otherwise allowed . . . [when] unreasonably cumulative or duplicative, or can be obtained from some other source.").

Case 2:13-cv-00885-PP-DEJ    Filed 05/22/17    Page 27 of 33    Document 136

analyzes relevant labor markets . . . and the disparity exists at the corporate level, across business units, across job categories, and across geographies"));

- PeopleFluent could not perform reliable analyses because Infosys provided no data on variables that would allow meaningful statistical analysis of alleged discrimination, (Siskin Supp. Rpt. 3-4 (ECF No. 125-2)); and

- Regulations expressly provide that a reported placement goal "constitutes neither a finding nor an admission of discrimination" (41 C.F.R. §60–2.16(b)) and do not even contemplate placement goals for Caucasians. *Cf.* Pls.' Br. 9 ("the disparity far exceeds placement goals set to try to curb preference for a single race").

Plaintiffs, in fact, remained sufficiently dissatisfied with their own explanations of relevance in class certification briefing as to submit *a sur-sur-reply with an entirely new theory*: that Infosys's failure to meet affirmance action performance goals reflected in PeopleFluent documents establishes discrimination under *Mozee v. Am. Comm. Marine Serv. Co.*, 940 F.2d 1036 (7th Cir. 1991). *See also* Pls.' Br. 9 n.20. But it works no better. Whereas *Mozee* involved a past discriminator's failure to *implement* its affirmative action plans, Plaintiffs accuse Infosys of not *achieving* performance goals—something incapable of suggesting discrimination under the plain terms of the regulations. *Mozee*, 940 F.2d at 1051 (recognizing the district court's conclusion that "[e]vidence of an employer's failure *to follow the requirements of* an affirmative action plan is also relevant, though not conclusive, in determining intentional racial discrimination") (emphasis added). And regardless, Infosys included placement goals—the smokeless "smoking gun"—in its *original* production.

Having failed, in short, to identify admissible evidence in the staggering volume of PeopleFluent documents and ESI already produced by Infosys, Plaintiffs are demanding more

US.112032679.04

discovery of *less* relevant information—in effect, documents about irrelevant documents. This discovery is unwarranted. Whether as a "sanction" under Rule 26(g) or 37(d), or as relief for an unarticulated[20] motion to compel, Plaintiff's requests violate the proportionality requirement of Rule 26. *See generally* 26(b)(1) (limiting discovery to what is proportional to case needs). *See generally Melendez v. Illinois Bell Tel. Co.*, 79 F.3d 661, 672 (7th Cir. 1996) (courts should only impose sanctions "proportionate to the circumstances" of the discovery violation).

### D. <u>Plaintiffs' motion should be denied as untimely.</u>

Not merely its failure on the merits, but Plaintiffs' inexplicable delay in filing this motion should preclude any sanction against Infosys. Though Rule 37 does not provide deadlines, the Seventh Circuit recognizes that "unreasonable delay may render" a sanctions motion untimely. *Brandt v. Vulcan, Inc.*, 30 F.3d 752, 756 (7th Cir. 1994).[21] Its decision in *Brandt,* for example, affirmed the district court's denial of a Rule 37 motion as untimely where the plaintiff suspected—but did nothing to address—the defendant's alleged failure to provide true and complete discovery responses until trial. Other courts have found spoliation motions filed in close proximity to summary judgment untimely. *See., e.g.*, *Ferrone v. Onorato*, 2007 WL 2973684, at *10 (W.D. Pa. Oct. 9, 2007) (finding that spoliation allegations made in opposition to summary judgment "come too late").[22] Similarly, inattention to discovery directives and deadlines has supported findings of unreasonable delay. *See MGA Entertainment, Inc. v. National Products Ltd.*, No. CV 10-07083, 2012 WL 4052023, at *5 (C.D. Cal. Sept. 14, 2012).

---

[20] The Court should also deny any motion to compel because Plaintiffs make no Rule 37(a) argument.

[21] *See generally Kaplan v. Zenner*, 956 F.2d 149, 152 (7th Cir. 1992) ("Prompt filings of motions for sanctions after discovery of an abuse best serve both the systemic and case-specific deterrent functions of Rule 11.").

[22] *See also Glenn v. Scott Paper Co.*, No. 92-1873, 1993 WL 431161, at *10 n.3 (D.N.J. Oct. 20, 1993) (rejecting spoliation claim "first brought defending a summary judgment motion after completion of discovery" and without earlier motions as untimely); *Morse Diesel Int'l, Inc. v. United States*, 81 Fed. Cl. 220, 222 (Fed. Cl. 2008) (finding spoliation sanctions motion filed after ruling on partial summary judgment untimely); *see generally Goodman v. Praxair Servs., Inc.,* 632 F.Supp.2d 494, 507 (D. Md. 2009) (noting that "a court should examine the temporal proximity between a spoliation motion and motions for summary judgment" to determine timeliness of motion).

28

The reasoning of these decisions is straightforward. The least disruptive time to impose discovery sanctions is during discovery:

> Reopening discovery, even if for a limited purpose, months after it has closed or after dispositive motions have been filed… can completely disrupt the pretrial schedule, involve significant cost, and burden the court and parties. <u>Courts are justifiably unsympathetic to litigants who</u>, because of inattention, neglect, or purposeful delay aimed at achieving an unwarranted tactical advantage, <u>attempt to reargue a substantive issue already ruled on by the court through the guise of a spoliation motion, or use such a motion to try to reopen or prolong discovery</u> beyond the time allotted in the pretrial order.

*Goodman*, 632 F.Supp.2d at 508 (emphasis added).

Here, Plaintiffs offer no justification for a delay that could upend more than six months of class-related litigation. Though focused exclusively on the sanction of additional discovery, Plaintiffs filed this motion eight months after discovery closed on September 16, 2016. (ECF No. 61). Plaintiffs delayed for almost a year after being told in July of 2016 that Infosys could not locate "usable ESI" for Jalona and Kedia; and they waited months after being instructed to resolve discovery issues relating to PeopleFluent in January of 2017. (Boshkoff Decl. Ex. 7; ECF No. 112 (directing parties to work out a plan to handle PeopleFluent documents)). But more inexplicably still, Plaintiffs waited to seek what they now describe as critical evidence until months *after* briefing had closed on motions for summary judgment against the named Plaintiffs, on their own class-wide motion for partial summary judgment, on their class certification motion, and on Infosys's motion to exclude the opinions of their expert. In other words, Plaintiffs stood by while the parties submitted hundreds of pages of potentially dispositive evidence and briefing to the Court.

None of this could be described as reasonable. Nor do Plaintiffs even explain what they intend to do with the discovery they now seek. Would they try to re-open all or part of briefing that has already occupied the parties for eight months? Would they wait for rulings that could

US.112032679.04

render these requests—and all the effort and expense they impose on Infosys—moot? Either

way, the immense costs of their delay dwarf any minimal benefit of expanding discovery.

*Compare MGA Entertainment, Inc.*, 2012 WL 4052023, at *5 (denying sanctions motion as

unreasonably delayed where defendants allowed discovery and motion hearing deadlines to pass

"after being specifically ordered by the District Judge on May 10, 2012 to meet and confer

regarding sanctions issues"); *with Goodman*, 632 F. Supp. 2d at 509 (though "difficult" *not* to

deny motion filed "two months after dispositive motions had been fully briefed" as untimely,

court allowed sanctions motion that (among other things) did not affect summary judgment or

require additional discovery).[23] Having failed to ask for more time and discovery *before* the

parties completed six months of briefing on potentially case-ending motions, plaintiffs should

not be permitted to re-open discovery now.

### E.      Infosys is entitled to its fees in defending this unwarranted motion.

Finally, Plaintiffs' request for fees under Rule 37(d) and (e) is unsupported by any

grantable request, and would reward their failure to work in good faith to resolve this dispute.

Rather, Rule 37(a)(5)(B) entitles Infosys to its "reasonable expenses" in opposing this motion.

### CONCLUSION

Plaintiffs' motion should be denied and Infosys granted its reasonable expenses.

Date: May 22, 2017                            Respectfully submitted,

                                              FAEGRE BAKER DANIELS LLP


                                              /s/Ellen E. Boshkoff
                                              Ellen E. Boshkoff

---

[23] Delay of almost eight months after the discovery deadline is clearly fatal to the extent Plaintiffs rely on a motion to compel. *See, e.g., Packman v. Chicago Tribune Co.*, 267 F.3d 628, 647 (7th Cir. 2001) (no abuse of discretion in finding motion to compel filed "after discovery had closed, the summary judgment briefing schedule had been set, and defendants had filed their summary judgment motion" untimely). *See also Mortle v. United Parcel Service*, No. 05-cv-117, 2006 WL 776745, at *1 (E.D. Wis. Mar. 27, 2006) ("A district court may properly deny a motion to compel discovery where the motion to compel was filed after the close of discovery.").

Rozlyn M. Fulgoni-Britton
FAEGRE BAKER DANIELS LLP
300 North Meridian Street, Suite 2700
Indianapolis, IN  46204
(317) 237-0300
(317) 237-1000 (fax)
ellen.boshkoff@FaegreBD.com
rozlyn.fulgoni-britton@FaegreBD.com

George A. Stohner
Gregory P. Abrams
Lindsey M. Hogan
FAEGRE BAKER DANIELS LLP
311 S. Wacker Drive, Suite 4400
Chicago, IL  60606
(312) 212-6500
(312) 212-6501 (fax)
george.stohner@FaegreBD.com
gregory.abrams@FaegreBD.com
lindsey.hogan@FaegreBD.com

Dulany Lucetta Pope
FAEGRE BAKER DANIELS LLP
202 S Michigan Street, Suite 1400
South Bend, IN  46601
574-234-4149
574-239-1900 (fax)
lucetta.pope@FaegreBD.com

Attorneys for Defendants, Infosys Technologies
Limited, Inc. and Infosys Public Services, Inc.

US.112032679.04

## CERTIFICATE OF SERVICE

The undersigned attorney certifies that a true and correct copy of the foregoing

Defendant's Brief in Opposition to Plaintiffs' Motion to Compel and for Santions was served on

all counsel of record by electronic service through the Clerk of the Court's CM/ECF filing

system on May 22, 2017.

Daniel A Kotchen
dkotchen@kotchen.com

Michael F Brown
mbrown@dvglawpartner.com

Michael J von Klemperer
mvonklemperer@kotchen.com

**Notice has been delivered by other means to:**

Vonda K. Vandaveer
VK Vandaveer PLLC
PO Box 27317
Washington, DC 20038-7317
atty@vkvlaw.com

/s/Ellen E. Boshkoff _____