UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF WISCONSIN

----------------------------------------------------------------

BRENDA KOEHLER, et al,           )
                                 )
                Plaintiffs,      )   Case No. 13-CV-885
                                 )   Milwaukee, Wisconsin
      vs.                        )
                                 )   December 22, 2022
INFOSYS TECHNOLOGIES LTD, INC.,  )   10:02 a.m.
et al,                           )
                                 )
                Defendants.      )
                                 )
----------------------------------------------------------------

**TRANSCRIPT OF ORAL RULING**
BEFORE THE HONORABLE PAMELA PEPPER
UNITED STATES CHIEF DISTRICT JUDGE

APPEARANCES:

For the Plaintiff
BRENDA KOEHLER, et al:          Kotchen & Low LLP
                                By: Daniel A Kotchen & Linsey M
                                Grunert
                                1918 New Hamshire Ave NW
                                Washington, DC 20009
                                Ph: 202-468-4014
For the Defendant               dkotchen@kotchen.com
INFOSYS TECHNOLOGIES LTD,
INC., et al:                    Drinker Biddle & Reath LLP
                                By: Cheryl D Orr & Samantha M
                                Rollins
                                4 Embarcadero Center - 27th Fl
                                San Francisco, CA 94111
                                Ph: 415-591-7503
                                Fax: 415-591-7510
                                Cheryl.orr@faegredrinker.com




U.S. Official Transcriber:      SUSAN M. ARMBRUSTER, RMR
Transcript Orders:              Susan_armbruster@wied.uscourt.com

Proceedings recorded by electronic recording,
transcript produced by computer aided transcription.

1    TRANSCRIPT OF PROCEEDINGS

2    Transcribed From Audio Recording

3    *    *    *

4        THE CLERK:  Court calls Case No. 13-CV-885, Brenda

5    Koehler, et al v. Infosys Technologies Ltd, Inc.  Please state

6    your appearance starting with the attorneys for the plaintiff.

7        MR. KOTCHEN:  Good morning, Your Honor.  Daniel

8    Kotchen of Kotchen & Low.  And with me is Linsey Grunert.

9        THE CLERK:  For the defendants.

10        MS. ORR:  Good morning, Your Honor.  Cheryl Orr and

11    Samantha Rollins on behalf of Infosys.

12        THE COURT:  Good morning to everyone.  Thank you for

13    taking the time this morning ahead of the holidays or during the

14    holidays depending on what you're celebrating how you look at

15    it.

16        As you all recall, we were last together, at least on

17    the phone, for a status conference in November, November 10th.

18    And at that point, I indicated that I had ruled on the *Daubert*

19    motion, and the ruling on that motion had lead to rulings on the

20    motion for class certification and so forth.

21        I scheduled the status hearing to ask I guess mainly

22    the plaintiffs what next steps they wanted to take.  I had

23    anticipated, and I think I said this at the hearing, that

24    perhaps the plaintiffs might want to modify to some extent their

25    response to the Motion for Summary Judgment given the rulings.

1    But instead what Mr. Kotchen proposed was that the plaintiffs

2    wanted to propose a new expert, a new expert opinion.  I think

3    he indicated that they thought -- the plaintiffs thought they

4    had an expert that could address the concerns that I had

5    expressed with Dr. Neumark's methodology, and they also had

6    wanted to reopen discovery to address discovery produced after

7    the discovery cutoff had passed, specifically the People Fluent

8    information that had been received from People Fluent, and then

9    the privileged log documents.

10           I took some brief argument on that.  I think defense

11   counsel offered briefing, and I told you all that I didn't think

12   anymore paper was necessary in this case, but that I wanted to

13   take a look at a few things before I gave you my ruling.  And I

14   gave you a date by which I would give the ruling, and then

15   obviously on that date told you that I was going to address you

16   today because it frankly took me a little bit longer than I had

17   anticipated.  I should have realized that what I wanted to do

18   was look back through the docket and see what had transpired in

19   front of Judge Jones.  I was not present at all of those

20   hearings; although, there were times when I felt like I was

21   because quite frequently after he had a hearing with you all,

22   Judge Jones would wander down the hall or I would wander down

23   the hall to his office, and we would talk about the issues that

24   had come up and what you all were thinking, and he would

25   frequently say to me folks want more time for this or they're

3

1  thinking about extending the time for that, is that okay?  And I

2  would say, yes.

3          So I wanted to actually go through the docket and see

4  what had transpired and get a sense of whether any of these

5  issues had been dealt with in front of Judge Jones or not.  And

6  that turned out to be a little bit more of a time slot than I

7  thought it would be because I guess I should have known all of

8  the number of times that you appeared in front of him and the

9  number of hearings that you had and the water that passed under

10  the bridge.  But I didn't estimate it properly, so it's taken me

11  a little bit longer to get through to do that.

12          So I asked you to join me here on the phone today so

13  that I could give you an oral ruling on the plaintiffs' oral

14  request from November 10th, the oral request to reopen discovery

15  to allow the plaintiffs to name a new expert and provide new

16  expert disclosures and the oral request to reopen discovery and

17  to avoid -- given the length of this case and its history.  To

18  avoid anybody sitting on tencher hooks, I'm going to first tell

19  you that I'm denying both of those motions, and then I will then

20  explain why.

21          I'm going to take the expert witness request first.

22  As you all know, this case was filed on August 1st of 2013.  And

23  even in the original complaint, it was filed as a pattern or

24  practice case.  So as far back as August the 1st of 2013, the

25  plaintiffs knew that they were going to have to make a prima

1    facie case of discrimination.  And the case law dating back to

2    *Teamsters* and, perhaps, even earlier emphasized the need for

3    statistical analysis to be able to make such a prima facie case.

4            The complaint was amended in September of that year,

5    and again it didn't change the fact that the case was alleged as

6    a pattern or practice case.

7            When the parties filed their first proposed case

8    schedule, the Rule 26F plan, in July of 2015, by that time the

9    case had been reassigned to me.  They proposed -- The plaintiff

10   proposed simultaneous Rule 26 expert disclosures seven months

11   after the issuance of the scheduling order whenever that may be,

12   and then they proposed a bifurcated discovery schedule.

13           We had the Rule 16 conference on August 12th of 2015.

14   Already I was noticing that there seemed to be two different

15   lawsuits being pursued, one by the plaintiff and one by the

16   defense.  But at any rate, I ordered a fact discovery deadline

17   of June 13, 2016; on August 15, 2016, deadline for disclosure of

18   experts.  I did not adopt the plaintiffs' suggestion that there

19   be simultaneous expert disclosure.  I ordered sequential expert

20   disclosure.

21           The plaintiffs were to disclose their experts by

22   September 13, 2016, and that would have been 13 months after the

23   scheduling order, so I almost doubled the amount of time that

24   plaintiffs had asked for to propose an expert.  At that point,

25   we were two years into the litigation.  The plaintiffs know that

1  they filed a pattern or practice case, so they know they'll have

2  to carry the initial burden of proving a regular pattern or

3  practice of discrimination by a preponderance of the evidence.

4  They know that the Seventh Circuit has emphasized the importance

5  of statistics in making those findings, and I've given them

6  almost twice the amount of time that they had requested to

7  propose that expert.

8          There were a number of hearings that proceed after

9  that.  In fact, there's Judge Joseph and back in-between.  And

10  eventually the topic came up in May of 2016 of possibly

11  extending the discovery deadline.  No motion of experts, just

12  extension of discovery deadline.  And around that time, I

13  referred the case to Judge Jones because it looked like there

14  were going to be a number of discovery issues, and I will come

15  back to those in a moment.

16          So we continue on through the fall of September 16th.

17  The discovery deadline actually closes on September 16, 2016,

18  without as best I can tell calling to the docket anyone asking

19  for an extension of that deadline and no mention of extending

20  the deadline for experts.  There's a request for dispositive

21  motion deadline to be extended in early September, but no

22  request to extend the deadline for experts.

23          On September 22nd of 2016, nine days after the

24  plaintiffs' deadline for disclosure of their experts, there was

25  a hearing.  There was a discussion of filing a class

1  certification motion.  There was some vague discussion of the

2  briefing schedule for the class certification motion, and it

3  appeared from what I could tell from the minutes that the

4  plaintiff had, in fact, disclosed their expert report on the

5  deadline -- September deadline because the defendants were

6  expressing concern about some of the information that they had

7  seen in that report.

8          In particular, they thought perhaps there were other

9  witnesses out there whom they have not been made aware of.  By

10  now by September 22nd of 2016, the plaintiffs have obtained some

11  discovery.  They know that they're alleging a pattern or

12  practice of discrimination in favor of "Southeast Asians".  They

13  didn't seek an extension of the deadline for disclosing the

14  expert, and again that deadline was an extended one from the one

15  that they had requested.

16          The first document that gets filed on the docket that

17  relies on or references Dr. Neumark's analyses is the Motion to

18  Certify the Class.  It was originally filed on September 24th at

19  Docket Number 81, and it was refilled again on October 17th at

20  Docket Number 88.

21          And as I said in my -- in my order of September this

22  year, that motion was riddled with references to and reliance on

23  Dr. Neumark's opinion.  So once that's out there, the opinion is

24  in play.  It is about two months later not quite, December 19,

25  2016, that the defendants filed their Motion to Include

1    Dr. Neumark's opinion, their *Daubert* motion at Docket Number 97.

2         So as of December 19, 2016, the plaintiffs are on

3    notice that the defendants believe that there are numerous

4    deficiencies in Dr. Neumark's analysis and in Dr. Neumark's

5    methodologies.

6         At that point arguably, the parties could have or the

7    plaintiffs could have gone to Judge Jones and said, look, some

8    concerns have been pointed up, we want some additional

9    opportunity to see if we can't find another expert who would

10   address those concerns that the defense has expressed, but

11   that's not what the plaintiffs did.

12        As I said, defendants filed their motion on December

13   19th of 2016.  There was a hearing before Judge Jones on

14   December 23rd just a few days later, and there was no mention

15   of, you know, our expert's been challenged, can we have an

16   opportunity to, perhaps, consider proposing new experts?  All of

17   the discussion was about having recently gotten information from

18   People Fluent.

19        The plaintiffs filed their opposition to the *Daubert*

20   motion on January 17th of 2017, again no request to try to find

21   a new expert.  Instead, there was some discussion of having

22   received People Fluent documents at that point.

23        So throughout the briefing on all of the motions that

24   got filed in September, October, November, December, January all

25   through that period of time 2016 and 2017, the plaintiffs never

1  proposed the idea of attempting to find another expert or

2  extending the deadline for discovery to find another expert to

3  try to address the concerns that had been raised in the *Daubert*

4  motion.

5          Everybody knows, of course, that the *Daubert* motion

6  was pending for a very extended period of time and that, of

7  course, lies entirely on my plate.  But the point that I make in

8  raising that issue is that there was quite a long period of time

9  where the *Daubert* motion had been fully briefed.  In fact, the

10 other motions as well had been fully briefed, and the parties

11 were expressing concerns understandably to Judge Jones about

12 what was taking me so long and whether there was anything they

13 needed to be doing.  But there were years during which the

14 plaintiffs could have stepped forward and said, you know, we

15 know that there's this issue that's been presented with experts,

16 is there an opportunity for us to try to bring in another expert

17 to supplement Dr. Neumark, or could we sort of stop the clock

18 and propose a new expert?  Pretty much what the plaintiffs

19 proposed to do at our last status conference back in November.

20          The Seventh Circuit has spoken to this issue, and

21 they've spoken to it several times.  The first decision that I

22 will commend to you is a case called *Winters, W-i-n-t-e-r-s, v.*

23 *Fru-con, F-r-u - c-o-n*, 498 F.3d 734, a Seventh Circuit decision

24 from 2007.

25          And without going into too terribly much detail about

1  the facts of the case, what had happened was that one of the

2  parties, *Winters*, had proposed experts.  The district court,

3  similar to what I did with Dr. Neumark, rejected those experts'

4  tendered testimony finding that they had not conducted some

5  testing or utilized any other the method of research to

6  compensate for failure to conduct testing and so excluded those

7  experts.

8         And when one gets to page 743 of that decision, one

9  reaches this point.  Finally, *Winters* argued that the district

10  court erred in failing to reopen discovery to allow his proposed

11  experts to conduct testing of their alternate designs.  *Winters*

12  sought to reopen discovery after the district court decision

13  barring his proposed experts.  "We reviewed the district court's

14  decision not to reopen discovery for abuse of discretion",

15  quoting *Raymond v. Ameritech Corporation*, 442 F.3d 600 at 603

16  Note 2, Seventh Circuit case from 2006.

17        The litigation process does not include "a dress

18  rehearsal or practice run" for the parties, quoting *Steen,*

19  *S-t-e-e-n v. Myers, M-y-e-r-s*, 486 F.3d 1017 at 1022, a Seventh

20  Circuit case from 2007.  "Winters had ample time to develop his

21  case and conduct his testing of his alternative design during

22  the discovery period.  His inability to produce admissible

23  expert testimony is due to his own actions, namely the failure

24  of his proposed experts to test their alternatives.  The

25  district court was not required to give *Winters* a "do over", and

1   therefore we find the district court did not abuse its

2   discretion."

3          The second case that I'll refer you to is *Bielskis*,

4   *B-i-e-l-s-k-i-s v. Louisville Ladder Inc.*, 663 F.3d 887, a

5   Seventh Circuit case from 2011.  A similar thing had occurred in

6   the *Bielskis* case.  There had been an expert that had been

7   rejected by the district court, and *Bielskis* then made a Motion

8   for Continuance to obtain a different expert, pretty much

9   identically to the request being made by the plaintiffs here.

10         And in making that request, *Bielskis* relied on another

11  Seventh Circuit case, a case called *Smith v. Forward Motor*

12  *Company*, 215 F.3rd 713 at 718, a Seventh Circuit case from 2000.

13  And the court said, "To support his argument, *Bielskis* again

14  relies on *Smith*.  Because we remanded in *Smith*, we explicitly

15  declined to reach the issue of whether the district court had

16  abused its discretion by denying a continuance.  We noted

17  however in *Bielskis* relies heavily on this observation that

18  "courts have generally found an abuse of discretion" when "a

19  trial courts own action causes a need for continuance and that

20  court then denies the continuance resulting in prejudice to a

21  party", citing *Smith* at 722.

22         The two cases *Smith* cites in support of that

23  proposition however are entirely distinguishable.  In *Fowler v.*

24  *Jones*, 899 F.2d 1088 at 1095, an Eleventh Circuit case from

25  1990, the court concluded that in forma pauperis litigant should

1  be entitled to rely on the US Marshal to serve process, and thus

2  the district court had abused its discretion by denying a

3  continuance to allow the plaintiff to perfect service on three

4  defendants, *Fowler* at 1095 through 1096.

5  In the second case, the Ninth Circuit concluded that a

6  defendant corporation was denied a fair trial after the district

7  court assured the corporation that it would accommodate the

8  travel schedule of the corporation's expert, but then concluded

9  the trial before the expert could return from the scheduled trip

10  and testify. *Fenner, F-e-n-n-e-r v. Dependable Trucking*

11  *Company*, 716 F.2d 598 at 601 through 602, a Ninth Circuit case

12  from 1993. And there's a quote from that case in the Seventh

13  Circuit decision here. "The district court's statement to

14  counsel that it would work out the problems faced by the

15  defendants because their expert would be unavailable until

16  July 20th lulled Dependable and Ralphs into a false sense of

17  security that the absent witness would be allowed to testify."

18  So the Seventh Circuit went on to say, "unlike in

19  those cases, the district court here did not affirmatively

20  "cause" the need for a continuance." The district court has

21  broad latitude in determining when to grant a continuance e.g.

22  *Maurice v. Slappy*, 461 US 1 at 11, a 1983, and *United States v.*

23  *Smith*, 562 F.3d 866 at 871, Seventh Circuit case from 2009. The

24  quote from that case is "whether to grant or deny a continuance

25  is a matter of case management."

1    The Seventh Circuit said, "we will overturn the

2    district court's decision only when the judge has acted

3    unreasonably and actual prejudice is shown", and that's quoting

4    from the *Smith* case 562 F.3d at 871.

5        "Although the question is a close one, we do not

6    believe the district court here abused its discretion.

7    Discovery had closed when *Bielskis* requested continuance to

8    obtain a new expert".  The district court was entitled as a

9    principal of case management to refuse *Bielskis'* request for a

10   second bite at the expert witness apple, i.d. at 871 "having

11   given *Smith* a fair opportunity to retain a suitable expert, the

12   court was under no obligation to let him have another chance to

13   present expert testimony.  If at first you don't succeed, try,

14   try again might be a memorable maximum, but it is ill suited as

15   a principal for case management."

16       So the Seventh Circuit has at least twice and there

17   may be other cases, but those are the two that I found on a

18   quick search, at least twice upheld the district court's refusal

19   to either grant a continuance in a case or to reopen discovery,

20   whatever procedural mechanism you want to call it, to allow a

21   party whose expert has been rejected or excluded to somehow

22   rehabilitate that expert or to find a new expert.

23       There are also a number of district court cases that

24   have come to that same conclusion, several of them out of the

25   Northern District of Illinois as you might expect, but I think

13

1    the Seventh Circuit cases make the point.

2              So the case law indicates that there is support for

3    district court judges, as a matter of case management, declining

4    to give the parties a second bite at the expert apple.  And in a

5    case like this one where the scheduling order didn't even come

6    out until quite sometime after the case had been filed and the

7    scheduling order gave the plaintiffs more time than the

8    plaintiffs themselves had proposed to produce an expert, and

9    after the plaintiffs had produced that expert they were put on

10   notice by the defendants at the end of 2016 that the defendants

11   at any rate thought there were significant deficiencies with

12   that expert's methodologies and conclusions, and the parties had

13   because of my delay a significant amount of time during which

14   they could have either sought from Judge Jones or me -- the

15   plaintiffs could have -- additional time to either file a

16   supplemental expert or to try to rehabilitate Dr. Neumark or to

17   try to find an expert who could replace Dr. Neumark.

18             The plaintiffs didn't do any of those things.  The

19   plaintiffs waited until I had ruled on the motion -- on the

20   *Daubert* motion and found Dr. Neumark wanting and excluded his

21   expert testimony to then come back at this extraordinarily late

22   stage in the game and ask now to start over again.

23             There is also some of the district court cases that

24   talk about the practicalities of proposing a new expert deep

25   into the litigation.  The fact that that would reopen expert

 1  discovery at the very least that defense would have the

 2  opportunity to depose that expert, possibly propose an expert to

 3  address the new expert, and the extent to which that would slow

 4  down issues.  And in this case, it could conceivably lead to

 5  some parties may --  maybe the plaintiff, maybe the defendant, I

 6  can't necessarily know how that would play out, asking to go

 7  back to square one and start over with other motions like class

 8  certification, class certification motion or summary judgment

 9  motions.  It is in many respects as if we would be turning back

10  the clock and starting all over again on a number of the

11  pleadings that have already been filed.

12          While taking full responsibility for the extensive

13  delay that occurred before my colleague Brett Ludwig was

14  appointed to the bench and then during some of the insanity that

15  was happening during the pandemic, those delays are all mine,

16  and I take responsibility for those.  But the fact remains that

17  there have been a number of delays of all sorts, and this case

18  has been pending for an extended period of time.  And it would

19  be deeply prejudicial to the defendants and to basically the

20  system and the progress of the case for the plaintiffs to be

21  able to at this very late stage come in and as the Seventh

22  Circuit said in one of those cases get a do over or a try, try

23  again to try to produce an expert that didn't have the issues

24  that I identified with Dr. Neumark.

25          So I am not going to grant the oral request made at

the November 10th hearing to allow the plaintiff to propose a new expert. For very similar reasons although from a historical, chronological background and slightly different ones, I'm not going to grant the request to reopen discovery and to conduct further discovery on information that was provided after the discovery deadline.

Now, I understand I worked my way back through the docket a couple of times. And as I indicated, after some request for extension of the discovery deadline which Judge Jones granted and I think on at least a couple of them he conferred with me as best I recall, the final discovery deadline landed on September 16, 2016, and I couldn't find anywhere in the docket that anybody had filed a motion or made a formal request at any of the hearings in front of Judge Jones to extend that deadline.

When the plaintiffs responded to the *Daubert* motion, this is now fast forward a couple, three months to December or January, December of 2016, January 2017, the plaintiffs brought up the fact that they had only recently received returns on their subpoenas to the People Fluent Company. They indicated that they had gotten some of the People Fluent documents on December 13th of 2016, and that's obviously after the September 16th deadline even though they filed their subpoena ahead of the September 16, 2016 deadline.

And then they said that they got another chunk of

1    documents or notice of information for People Fluent on January

2    17th of 2017.  So I don't think there's any question, and it

3    doesn't sound like anybody disputed even in front of Judge Jones

4    that People Fluent responded to the plaintiffs' subpoena after

5    the deadline for completing discovery had passed.

6         And in fact, the plaintiffs brought that up directly

7    at a status conference in front of Judge Jones on January 30th

8    of 2017.  They were talking -- The parties as best I can tell

9    were discussing the plaintiffs, perhaps, needing an extension of

10   time to file their reply brief in support of their Motion for

11   Class Certification.

12        And at that point, the minute entry indicates that the

13   plaintiffs brought up the fact that they had received data

14   relating to hiring, promotions and terminations from this third

15   party company, People Fluent.  The plaintiffs expressed the

16   concern that this data was different from the date they already

17   received from Infosys.  They thought Infosys may be

18   misrepresenting data, and the fact that they hadn't had it

19   before they were filing their various motions was prejudicial.

20   The statement was even made that the plaintiffs felt that the

21   case could have been over by that time by January 2017 if the

22   plaintiffs had had that information earlier.

23        And Judge Jones kind of said at this hearing so what

24   are you --  What are you wanting me to do about it?  And the

25   upshot was that he directed the parties to figure out a plan on

17

1  "how to handle this new information."  There was no formal

2  request at that time to reopen discovery.  It is just Judge

3  Jones saying you guys get back to me and give me some kind of

4  plan with how you want to deal with this.

5          Interestingly after that hearing on February 6th of

6  2017, the plaintiffs went ahead and filed their reply brief in

7  support of class certification.  So the next thing that came

8  down the pipe was not look, we need to call a reaching halt to

9  everything, we need to reopen discovery, we've got some new

10 stuff here we have to track it down and figure it out.  The

11 plaintiffs elected instead to file their reply brief in support

12 of class certification.

13         That being said, the issue kept coming up.  There was

14 a February 10, 2017 status conference before Judge Jones.

15 Somebody ordered a transcript of it because it's Docket Number

16 138, and I read through that entire transcript.  And again, the

17 plaintiffs representing this notion that they had recently

18 gotten People Fluent's data, and that it would have been much

19 more helpful to them to have had that data earlier in the

20 process and to have been able to use it prior to when they were

21 filing their motions.

22         I think Mr. Kotchen may have been speaking on behalf

23 of the plaintiffs.  He said this issue with People Fluent data

24 has left us again in a very procedurally awkward situation.  We

25 wasted what I think of is about a year and-a-half because if we

1    knew about this data before, it would have focused all of our

2    discovery.  It would have changed the custodians we would have

3    been searching for and requesting.  The case would have probably

4    been resolved by now.  And he said, now there's a motion from

5    the defendants for summary judgment, our motion for partial

6    judgment, the class certification motion and a *Daubert* motion,

7    and none of it incorporates what we think of as dispositive data

8    except for our class certification reply, summary judgment reply

9    briefs.

10           And at this point, Judge Jones starts to push back a

11   little bit, and he asks if he's understanding correctly that the

12   plaintiffs already had the data underlying the People Fluent

13   discovery.  People Fluent had organized it and classified it and

14   apparently put it in some charts, and some of those charts are

15   referenced in the reply to the summary judgement motion.

16           But Judge Jones said isn't it true that you all had

17   the underlying data that People Fluent used to create those

18   charts and conduct those analyses?  And the plaintiffs

19   responded, well, we didn't have the benefit of the analyses, the

20   work that People Fluent did with that data.

21           And at that point, Judge Jones said, look, you guys

22   are going to have to figure something out here, and he asked

23   specifically do you think you need to file some sur-reply or

24   some additional briefs in either opposition to a *Daubert* motion

25   or in opposition to summary judgment?  He went further and said

1   if you think you need another round of responding or of opposing

2   summary judgment or supporting your class certification, then

3   make that proposition and give me a specific type of schedule on

4   how you would want to do it.  This is at pages 23 and 24 of the

5   transcript at lines 22 through 25.

6           And then he went on to instruct everybody to sit down

7   and think out what you have and what you need.  Maybe all you

8   need to do is supplement some assertions in the proposed

9   findings of fact.  He said, I don't know just think about it and

10  do it.  He also threw in don't brother meeting and conferring

11  because you're not going to agree as far as I can tell, just

12  file what you want.

13          Well, again instead of anybody filing documents

14  saying, okay, here's what we think we need to do, we think we

15  need more time to respond to this, we think we need to

16  supplement that, we think we need to explore these issues before

17  we do any further briefing, the next thing that happens is on

18  February 16th of 2017, six days later, this is at Docket Number

19  123, the plaintiffs simply file their opposition to the *Daubert*

20  motion, and the defendants on September 28th file their

21  opposition to class certification, and so the briefing just

22  continued.

23          We get to March 10th of 2017, this is at Docket Number

24  129.  And what the plaintiffs end up doing is they file a

25  document called Motion for Leave to File "Sur-Reply" in support

20

 1   of their Motion for Class Certification.  Again, that's at

 2   Docket Number 129, March 10th of 2017, and they indicate that

 3   they're doing this in response to Judge Jones' February 10th

 4   indication that they should figure out something, file some

 5   briefing or something regarding the effect of the People Fluent

 6   documents.

 7        This is --  The cure I suppose if you want to put it

 8   that way that the plaintiffs ask for is they say they need to

 9   file the sur-reply that they are proposing to "address arguments

10   raised by Infosys for the first time in their sur-reply

11   attacking their own affirmative action analyses."  That's at

12   page 2.  And the plaintiffs say that they want to address the

13   prejudice that's caused by Infosys withholding the People Fluent

14   information.

15        At Docket Number 129-1, also filed on March 10th of

16   2017, there is a proposed supplemental brief.  That's the one

17   that the plaintiffs were asking to file.  And what that brief

18   does is it argues that the People Fluent data are reliable and

19   that the Court should rely on the People Fluent data in granting

20   the Motion for Class Certification.  I noted this in my order

21   from back in September that the fact that the plaintiffs

22   basically said, okay, you know if you don't think that

23   Dr. Neumark's analysis is appropriate, you could just rely on

24   the People Fluent analysis.  You can make your decision that

25   way.

1        So again, there's no request to reopen discovery to

2   explore further the People Fluent data, to follow up on them.

3   The cure that the plaintiffs chose was to file a supplemental

4   brief saying the People Fluent data are reliable, and you can

5   use them.

6        So that's where things stand in March of 2017, and

7   Judge Jones granted that request to file the sur-reply on

8   March 17th of 2017 at Docket Number 131.  And again, there was

9   discussion.  The plaintiff said we think we've been prejudiced,

10  and we're going to think about filing a Motion for Sanctions.

11  And Judge Jones said, well, meet and confer before you do that.

12       If we move forward into May, the plaintiffs file a

13  Motion for Sanctions and a Motion to Compel.  That's at Docket

14  Number 134.  And in amongst the various allegations that the

15  plaintiff makes in that motion is their request to ask for

16  additional discovery.  That request though indicates that the

17  plaintiffs want to introduce evidence at trial that Infosys

18  engaged in misconduct, and they want fees and costs.

19       And this motion goes back through what it is that the

20  plaintiffs asked the defendants for, how they had phrased their

21  discovery requests, and why they believed that the phrasing of

22  their discovery requests ought to have tipped off Infosys that

23  they wanted the People Fluent data.

24       They talk about their July 24, 2015 discovery demand

25  asking for documents "related to the demographic or statistics

1  of Infosys' United States workforce."  Infosys had objected to

2  that saying it was a really, really broad discovery request, and

3  it would impose a burden.  This was battled out in front of

4  Judge Jones, and it resulted in Infosys being ordered to produce

5  data and Infosys did produce what the plaintiffs characterized

6  as raw data in November 2015, hundreds of thousands of fields

7  and codes and employees.

8          The plaintiffs argue that it was very difficult to

9  figure all this stuff out and figure out what it meant.  And the

10  upshot of this argument was that the way that People Fluent

11  packaged the information was much easier to follow and to

12  understand and to track, and so the plaintiffs were arguing,

13  look, this would have been much more helpful to us, but Infosys

14  never told us that they had the People Fluent analyses and claim

15  that they had produced everything that they had.

16          So that was the substance of the Motion for Sanctions.

17  That entire motion got briefed, and there was an oral argument

18  before Judge Jones on June 2nd of 2017.  That's at Docket Number

19  142, and the transcript of that hearing is at Docket Number 143.

20  And again after having read all those arguments and heard the

21  oral argument when it came time for Judge Jones to speak, he had

22  again expressed concern that it appeared to him that the People

23  Fluent documents on the one hand certainly would have been

24  helpful, and he agreed that there was one reading of the

25  discovery demand that could arguably have included a request for

1    the People Fluent documents.

2         But he said what he doesn't understand is how you

3    would specifically have changed anything that your expert said

4    in regard to either class certification or summary judgment if

5    you had had the People Fluent documents.  "That is to say what

6    additional argument that he could not make because he did not

7    have these documents would you have preferred or would you have

8    liked to have put on the record in regard to class certification

9    or summary judgment".  That's at pages 5 and 6 of the

10   transcript.

11        There ensued a discussion where the plaintiff said,

12   look, we asked for affirmative action materials.  And as far as

13   we're concerned, that's People Fluent.  And Judge Jones

14   interjected and said, yeah, I don't see those two things as

15   being the same thing.  But either way, I'm asking you, you know,

16   what would that have contributed to Neumark's analysis?  And are

17   you basically telling me that the People Fluent documents just

18   would have buttressed or supported Mr. Neumark's analysis?

19        Mr. Kotchen referred, yes, that's what we're saying,

20   and then he said, but we don't know if there's anything else out

21   there that maybe Infosys hasn't given us that would have been

22   helpful.  So there's a lot of discussion back and forth where

23   counsel for Infosys explaining, you know, what they turned over

24   and why and how they read the discovery demand and, you know,

25   why weren't we asked earlier if they thought there was some sort

24

1    of other iteration out there, and so there's a lot of back and

2    forth.

3           But eventually, Judge Jones asked the plaintiffs if

4    they'd agree to follow-up discovery on Sandra Jackson, who was

5    the Affirmative Action Director.  There was some discussion of

6    whether there was some central repository of Affirmative Action

7    documents.  And at this point and I think there was referenced

8    at the last hearing, Judge Jones brought up my name and said,

9    you know, Judge Pepper's wondering what's going on?  And

10   Mr. Kotchen said, well, we don't want any delay on the existing

11   motions.  We want the existing motions decided basically

12   divorcing the discovery issue from the motions that already had

13   been filed.

14          And so there was some further discussion about talking

15   and trying to figure out how Affirmative Action and People

16   Fluent related to each other and, you know, if there's anything

17   from People Fluent -- that Affirmative Action that wouldn't --

18   information that wouldn't have been covered by People Fluent.

19   And I think Judge Jones ended it by saying or actually

20   Mr. Kotchen made a point.  Mr. Kotchen said toward the end of

21   the hearing, one point of clarification if your question to me

22   earlier, is there anything from People Fluent that should have,

23   you know, we could have but didn't and Judge Jones said, yeah.

24   Mr. Kotchen says, "In class certification for instance if

25   there's a question about whether or not the existing motion

1    should be, you know, prolonged and the process goes on, we would

2    err in favor of just having those motions decided."  Judge Jones

3    says, understood.  Okay, that's actually helpful, Mr. Kotchen,

4    because I can -- Judge Pepper is very conscious of giving

5    everyone a full opportunity but she's also conscience of, you

6    know, making people wait when they don't need to so I'll be

7    happy to pass that along.  And the defense chimed in said, we

8    don't want whatever discovery issues are to hold up the motions

9    either.

10   So Judge Jones denies the Motion for Sanctions without

11   prejudice, denies the Motion to Compel, grants it in part.  And

12   then, there's some further discussion of what the parties are

13   going to talk about at that point.

14   And then as you know, there's an extended period of

15   time during which I did not, contrary to what Judge Jones

16   optimistic and helpfully told everyone, I did not move the case

17   as quickly as possible.  In that interim period, there was a lot

18   of discussion about the privileged logs, and he started going

19   through the privileged logs and looking at all the various

20   entries and making determinations about what should or shouldn't

21   be released and what should or shouldn't be redacted.

22   That all culminated in on September 30th of 2019 with

23   Judge Jones deciding a number of the privileged log issues.  And

24   I think I had that Docket Number -- I don't know if I --  I

25   don't know why I have it at Docket Number 55.  That is not

1    correct.  Anyway, he issued a decision regarding the privileged

2    log issues but as best I can tell didn't -- Sorry, it's docket

3    187.  There it is in my notes.  But he finished his order this

4    way.  He ruled on a number of the privileged log documents.  At

5    the end he said, "The Court further finds that its rulings on

6    these matters will necessitate defendants further review of the

7    entirety of their privilege log and a downgrade in production of

8    additional documents in a manner consistent with the Court's

9    rulings on the subset of documents discussed in this order.  The

10   Court orders that such review be stayed pending rulings on the

11   pending dispositive motions given the expense and effort

12   involved in this task."

13          So there were a number at that time of pending

14   dispositive motions, the Motion for Class Certification, the

15   plaintiffs' Motion for Partial Summary Judgment, the *Daubert*

16   motion and the still now pending defendant's Motion for Summary

17   Judgment, and he stayed rulings on the privileged log issues

18   until the -- all of those motions could be decided.

19          So there were -- There was extensive discussion about

20   the People Fluent data.  There was extensive discussion about

21   the way these discovery requests were phrased and the way that

22   Infosys understood them and responded to them and what it was

23   that the plaintiffs thought that they were asking for.

24          All of that discussion -- throughout those

25   discussions, Judge Jones had two different questions that he

1  continued to ask.  One of them was didn't you already have this
2  data just not in this form?  And it seems to me that the
3  plaintiffs answered that, yes we did, but having it in this form
4  would have been a lot more helpful.  And the other is, what
5  would this data have changed about anything that you would have
6  filed in these pending dispositive motions?  And the answer to
7  that seems to be, well, it just would have buttressed what was
8  already said.  And as it turns out, the plaintiffs did end up
9  using the People Fluent data and the People Fluent information
10 in their pleadings on the Motion to Certify the Class.

11         So other than the completion of the privileged log
12 analysis which Judge Jones I think rightly said should wait
13 until after the decision on all the dispositive motions due to
14 avoiding any expense that might not be necessary depending on
15 how those motions will be decided, I don't see what other
16 discovery after all these years is necessary to reopen.

17         It also seems to me that given the amount of time that
18 I lingered in making the decisions that I made, that even after
19 the case left Judge Jones and was no longer in front of him and
20 maybe after Judge Jones left, if the parties believed that there
21 was outstanding discovery that they needed to continue to
22 conduct as the days dragged on and the months dragged on and I
23 was not making decisions in the case, the parties could have
24 asked for that said, you know, look can we at least reopen
25 discovery and keep moving forward on whatever it is we think we

1    need to move forward on given the fact that, you know, we're not

2    getting a decision from the Court?  I understand that that could

3    be a costly endeavor as well because you could engage in that

4    discovery.  It could be extensive; although, it's hard for me at

5    this point given all the water that's under the bridge to

6    imagine that it would be very extensive.  I think even last time

7    we were together on November 10th, Mr. Kotchen sort of described

8    it as limited.  But that request, of course, could have incurred

9    some cost.  And then if I had ruled the way I did rule on some

10   of the motions, that cost arguably would have been for naught.

11   But those were requests that could have been made at any stage.

12          In particular, I have to say immediately after the

13   turnover of the People Soft information because that's the point

14   at which, you know, the discovery had been closed for two

15   months.  And then all of a sudden, there's information coming in

16   in two dribs and drabs from People Fluent.  And by January of

17   2017, the plaintiffs now realize, okay, there's some stuff out

18   here that we didn't have, and we'd like to know more.  It would

19   have been reasonable to make a request of Judge Jones to reopen

20   discovery at that point in time.

21          To make that request now five years on, it makes no

22   sense at all whatsoever, and it causes some of the same problems

23   that I indicated would be caused by allowing the plaintiff to

24   now at that stage in the litigation try to produce a new expert.

25          And again, the Seventh Circuit has reiterated numerous

29

1    times that it is within the district court's discretion to

2    determine whether or not to do things like extend discovery

3    deadlines or grant motions to compel, et cetera.  Just a handful

4    of cases.  Recent one the *Equal Opportunity Commission v.*

5    *Wal-Mart*, 46 F.4th 587 at 601, the 22 version of the Wal-Mart

6    case saying the district courts have broad discretion in

7    discovery-related matters.  That was in the context of a Motion

8    to Compel, "But we will only reverse the district court's ruling

9    after a clear showing that the denial of discovery resulted in

10   actual and substantial prejudice."  That's quoting *Gonzales v.*

11   *City of Milwaukee*, 791 F.3d 709 at 713, a 2015 Seventh Circuit

12   case.

13          Another case from 2018, *Guilbeau, G-u-i-l-b-e-a-u v.*

14   *Pfizer Inc.*, 880 F.3d 304 at 318, Seventh Circuit case from

15   2018.  "As a general rule, the appellate courts leave discovery

16   to the sound discretion of the district court, so we review this

17   decision only for an abuse of discretion."  That's citing

18   *Citizens for Appropriate Rural Roads v. Foxx*, F-o-x-x, 815 F.3rd

19   1068, 1081, a Seventh Circuit case from 2016.

20          In 2016-case called *Hassebrock, H-a-s-s-e-b-r-o-c-k v.*

21   *Bernhoft, B-e-r-n-h-o-f-t*, 815 F.3d 334, the court again

22   reiterated that discovery-related orders are viewed for an abuse

23   of discretion and noted that the district court in that case had

24   explained in denying a request to reopen discovery, that

25   reopening discovery would prejudice the defendants because the

30

1  case was old, and it had already moved to the summary judgment

2  stage and also that it would cause further delay and require the

3  defendants to prepare new motions on potentially different

4  grounds, and the Seventh Circuit said this reasoning is sound in

5  all respects.

6  Finally, there's another Northern District of

7  Illinois, which of course is not binding on me as a sister court

8  but *Abbott Labs v. Torpharm, Incorporated*, Case Number

9  97-C-7515, 2003 West Law case, 22462611, Northern District of

10  Illinois, October 29th of 2003.  This is the asterisk, page 4,

11  of the decision.  "The time for discovery expired long ago, yet

12  the court does not believe that after years of substantial

13  discovery a ruling on summary judgment and a ruling on appeal

14  discovery should be reopened at this advanced stage of the

15  litigation for the purpose of discovering information that could

16  have been made part of the case years ago."

17  We're not that far along of course, but we are years

18  into the case.  We do have rulings on the *Daubert* motion, the

19  Motion to Certify the Class, the plaintiffs' Motion for Partial

20  Summary Judgment and the only pending motion right now is the

21  defendants' Motion for Summary Judgment with regard to the

22  individual plaintiff.

23  And so in the same way that many of those cases talk

24  about the prejudice that would inure by reopening discovery deep

25  into the litigation, I believe the same prejudice would result

1    here.

2           Finally, I think and I know that I said at the
3    November 10th hearing, I anticipated, perhaps, the plaintiffs
4    might want to rework their response to the defendants' Motion
5    for Summary Judgment.  But as I went back through all of these
6    docket entries and I went back through and read what happened in
7    front of Judge Jones, as I've already discussed, Judge Jones
8    several times asked the plaintiffs whether or not they wanted to
9    have to go back and to supplement their filings with regard to
10   the summary judgment, if they wanted he said another round of
11   responding or opposing summary judgment, if they needed to file
12   some additional findings of fact to respond to the Motion for
13   Summary Judgment.  And all of this was around the plaintiffs'
14   argument that, hey, we've gotten this kind of dump of data from
15   People Fluent, and we weren't able to use that before.

16          And the plaintiffs rejected all of those arguments.
17   They went ahead.  They briefed the motions despite the fact that
18   they knew that they had gotten the People Fluent information
19   after the close of discovery and despite their argument that
20   they hadn't been able to fully incorporate it into their
21   pleadings, and they went ahead and did incorporate it into some
22   of their reply briefing and opposition briefing.

23          But the plaintiffs were given the very opportunity
24   that I thought they might ask me for after my ruling.  Judge
25   Jones gave them that opportunity and gave them an opportunity

32

1   more than once and told them to propose a plan, and the

2   plaintiffs didn't.

3          So I also don't think it is appropriate at this point

4   for the plaintiffs to go back now and somehow modify their

5   response to the defendants' Motions for Summary Judgment as to

6   the individual plaintiff.

7          So for all of those reasons, I am not going to allow

8   the plaintiffs to reopen discovery, to name or identify a new

9   expert or disclose a new expert.  I'm not going to allow

10  discovery to be reopened with one exception and; that is, that

11  depending on how the summary judgment motion goes as to the

12  individual plaintiffs, assuming that any or all of those survive

13  summary judgment, it would be appropriate I think to go back as

14  Judge Jones indicated and complete the privileged log analysis

15  once that decision has been issued.

16         And finally, I'm not going to give the plaintiff an

17  opportunity to modify their motion for their response I should

18  say to the defendants' Motion for Summary Judgment because they

19  had that opportunity and did not take it.

20         So the next step in the process is going to be that

21  I'm going to get you a ruling on the defendants' Motion for

22  Summary Judgment.  Once that ruling has been issued, then we'll

23  see what our next steps are from there.

24         As Ms. Wrobel indicated at the beginning of this

25  hearing, she recorded the hearing.  If you would like to get a

1    copy of the actual recording -- First of all, I should say if

2    you all probably are aware we post on the docket the audio of

3    hearings.  And so some days depending on how long it takes

4    Ms. Wrobel to get this attached to the docket, you will be able

5    to sit in your office and listen to this if you choose to do so.

6    If you prefer to get a copy of the recording on a thumb drive or

7    something of that nature, you can do that by calling the clerk's

8    office and asking them for one, and they'll get that for you.

9    And if you want a transcript, I think you already know you can

10   go on the website and utilize our transcript order form, and you

11   can order a transcript through the website.

12           So with that, that concludes my oral ruling on those

13   oral requests.  Anything further to take care of today,

14   Mr. Kotchen?

15           MR. KOTCHEN:  No, Your Honor.

16           THE COURT:  Anything further from the defense?

17           MS. ORR:  No, Your Honor.

18           THE COURT:  Thank you, everyone.  Take care.  Have

19   safe holidays and watch out for the weather tonight and

20   tomorrow.  It's supposed to be messy.  Take care.

21       (Whereupon proceeding was concluded.)

22

23

24

25

C E R T I F I C A T E


        I, SUSAN ARMBRUSTER, RMR, Official Court Reporter and

Transcriptionist for the United States District Court for the

Eastern District of Wisconsin, do hereby certify that the

foregoing pages are a true and accurate transcription of the

audio file provided in the aforementioned matter to the best of

my skill and ability.


Signed and Certified March 15, 2023.

/s/Susan Armbruster

Susan Armbruster


                    Susan Armbruster, RPR, RMR
                  United States Official Reporter
                  517 E Wisconsin Ave., Rm 200A,
                       Milwaukee, WI 53202
                 Susan_Armbruster@wied.uscourts.gov